# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00136-CV

**Jose Fernandez Galan Palau, Appellant**

**v.**

**Flor de Maria Navarro Sanchez, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-FM-06-002234, HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

## M E M O R A N D U M  O P I N I O N

This is an appeal from a final divorce decree dissolving the marriage of Appellant Jose Fernandez Galan Palau ("Galan") and Appellee Flor de Maria Navarro Sanchez ("Navarro"). Galan raises several issues challenging pre-trial rulings and the final divorce decree. Because we find no error in the trial court's determinations, we affirm the trial court's judgment.

## BACKGROUND

Galan and Navarro were married in 1950.[1] Navarro filed for divorce in Mexico in 2003, alleging that Galan had committed adultery. In her divorce petition, Navarro sought thirty percent of "the value of the goods acquired by [Galan] during the marriage." The Mexico court

---

[1] During their marriage, Galan and Navarro had four children. By the time the divorce proceedings were underway, one of the children had passed away and the other three children were over the age of eighteen.

denied Navarro's petition for divorce in February 2006, concluding that Navarro failed to prove that Galan committed adultery. Because the court denied the divorce, it also denied Navarro's request to receive thirty percent of the goods acquired by Galan during the marriage. Navarro appealed the judgment but then officially abandoned her appeal on May 3, 2006. The Mexico court dismissed the appeal on May 4, 2006.

On the same day, Navarro filed a petition for divorce in Texas.[2] On May 23, 2006, Galan filed a petition for divorce in Mexico. In the Texas lawsuit, the parties served discovery requests on each other. On April 16, 2007, Navarro filed a motion to compel Galan to respond to her discovery requests. After a hearing, the trial court granted the motion, finding that Galan had "wholly failed to respond or to object to any of [the] properly served discovery requests" and "wholly failed to complete and exchange his Sworn Inventory and Appraisement." The trial court ordered Galan to provide the documents by a certain date and to pay the attorney's fees Navarro incurred in bringing the motion.

On May 10, 2007, Navarro filed a second motion to compel and for sanctions after Galan failed to comply with the court's previous order. At a hearing on the motion on May 17, 2007, Galan's counsel requested thirty more days to respond to the discovery requests. The trial court granted the request but stated: "This [order] needs to be complied with and not before the Court again. And if it is [before the court again], then I would certainly encourage significant sanctions."

---

[2]    According to the record, Navarro had been living in a house in Austin since September 2005.

2

After thirty days passed and Galan still had not complied with the trial court's order, Navarro filed a third motion to compel and for sanctions on June 19, 2007. The trial court held a hearing on the motion and found that Galan failed to comply with the trial court's order. As sanctions, the trial court ordered that Galan was prohibited from offering any documentary evidence in support of his separate-property claims unless the evidence was produced prior to July 19, 2007, the day the order was signed. The trial court also ordered Galan to pay: (1) Navarro's discovery expenses; (2) the attorney's fees Navarro incurred in bringing the current and previous motions to compel; and (3) the cost of the transcript of the previous hearing.

Meanwhile, Navarro filed a motion for temporary orders, and the trial court granted the motion, awarding Navarro temporary support and interim attorney's fees. The trial court also ordered Galan to pay the property taxes on two of the couple's Austin properties and the mortgage payments on another.

On July 30, 2007, Navarro filed a motion to enforce the trial court's July 19, 2007 order and motion for sanctions. After a hearing, the trial court found that Galan had not complied with the July 19, 2007 order. The trial court ordered Galan to pay the previously ordered monetary sanctions to Navarro by September 4, 2007, and to respond to Navarro's discovery requests by August 31, 2007.

On August 14, 2007, Navarro filed a motion to compel depositions and for sanctions. After a hearing, the trial court denied Navarro's motion for sanctions but granted her motion to compel depositions. The trial court ordered, among other things, that Galan be deposed on September 4, 2007. Galan did not appear for his deposition as ordered.

3

On September 4, 2007, Navarro filed a Motion for Sanctions for Violation of Court Orders, alleging that Galan violated the court's orders that he appear for his deposition and respond to discovery requests. At a hearing on a different motion on September 10, 2007, the trial court ordered that Galan appear for his deposition on September 18, 2007. Galan did not appear for his deposition as ordered. On September 27, 2007, the trial court held a hearing on Navarro's Motion for Sanctions for Violation of Court Orders. The court found that Galan failed to comply with four court orders by not responding to discovery requests and not paying monetary sanctions. The court further sanctioned Galan, ordering that he was prohibited from offering any evidence regarding his separate-property claims unless the evidence was produced prior to the close of discovery on September 21, 2007. In a separate order, the trial court also found that Galan failed to appear for two depositions and ordered him to appear on October 2, 2007. The court further ordered that if Galan did not appear for his deposition, he would be prohibited from offering any evidence of affirmative claims.

When Galan arrived with his counsel for his deposition on October 2, 2007, a process server served him with a motion for enforcement of previous court orders by contempt, alleging that he had not responded to discovery requests, paid monetary sanctions, or appeared for depositions as ordered. Because the motion requested that Galan be jailed for noncompliance, Galan claimed a Fifth Amendment right to remain silent and left without testifying.

On October 9, 2007, Galan filed a pre-trial writ of habeas corpus, arguing that he was entitled to refuse to testify at his deposition based on his Fifth Amendment right. At a hearing on the motion, Navarro offered to withdraw her request for jail time with prejudice as long as Galan

4

appeared for his deposition on October 17, 2007, and Galan agreed. Accordingly, the trial court ordered Galan to appear and testify at his deposition on October 17, 2007. At the same hearing, the trial court considered another motion to compel filed by Navarro. The trial court granted the motion and sanctioned Galan for his failure to respond to Navarro's second set of interrogatories by ordering that Galan's experts were prohibited from testifying as to any impressions or opinions that had not been disclosed as of the date of the hearing. Galan did not appear for his deposition on October 17, 2007, claiming that he was ill and under doctor's orders to stay in bed.[3]

On November 5, 2007, the trial court heard pre-trial motions, including a motion for sanctions filed by Navarro. The trial court granted the motion, finding that Galan had failed to comply with multiple court orders requiring him to respond to discovery requests and appear for his deposition. As sanctions, the trial court ordered that Galan was prohibited from offering evidence of any affirmative claims at trial, including his separate-property claims.

The case went to trial on November 6, 2007. At the close of trial, the trial court granted the divorce on grounds of insupportability and adultery and ordered that Navarro receive 62.5 percent of the community estate and Galan receive the remaining 37.5 percent of the community estate. In addition, the trial court ordered Galan to pay 62.5 percent and Navarro to pay 37.5 percent of the attorney's fees incurred at trial. The trial court also ordered Galan to pay attorney's fees for any appeals brought from the trial court's final judgment.

On November 15, 2007, after the trial court had issued its ruling but before it had entered its final divorce decree, UBS Financial Services Inc. ("UBS") filed an interpleader action.

---

[3] At trial, Galan admitted that he had received a traffic ticket in Mexico on October 17, 2007, the day he was ordered to appear at his deposition in Texas.

UBS was a disinterested stakeholder who maintained two investment accounts that had been claimed by both Navarro and Galan.

On the following day, November 16, 2007, the trial court entered its final divorce decree. The decree awarded the two investment accounts maintained by UBS to Navarro. The trial court issued its findings of fact and conclusions of law on December 21, 2007. Galan filed a notice of appeal on February 13, 2008.

On March 31, 2008, the trial court held a hearing regarding UBS's interpleader action. After hearing UBS's arguments, the trial court granted UBS's petition and ordered that UBS transfer the two investment accounts into the registry of the court. The trial court also ordered that UBS be discharged from the suit and that Navarro and Galan be enjoined from taking any action against UBS regarding its management of the accounts.

On April 29, 2008, the Mexico court handling Galan's divorce suit granted Navarro and Galan a divorce. On April 30, 2008, Banc of America Investment Services, Inc. ("Bank of America") filed an interpleader action in Texas, alleging that it managed an investment account to which Navarro and Galan had made rival claims. The trial court granted Bank of America's petition on May 13, 2008, and discharged Bank of America from the suit. On June 12, 2008, Galan filed a second notice of appeal from the final divorce decree.

**DISCUSSION**

Galan raises five issues on appeal, contending that: (1) this case was rendered moot by the final Mexico judgment; (2) the trial court erred in denying Galan's plea in abatement; (3) the trial court erred in imposing sanctions prohibiting Galan from offering evidence as to his separate-

property claims; (4) the trial court erred in characterizing the property involved in the divorce as community property; and (5) the trial court erred in issuing fifty-three of its findings of fact and in denying Galan's request for findings of fact and conclusions of law regarding his and Navarro's separate property.[4]

We address each of Galan's issues separately below.

*Mootness*

Galan argues that an April 29, 2008 Mexico judgment granting Galan and Navarro a divorce rendered this appeal moot. Galan concedes that the final divorce decree in the Texas case was issued on November 16, 2007, five months before the Mexico judgment was issued, and he does not dispute that the language or content of the Texas judgment indicates that the judgment is final. Rather, he argues that Bank of America's interpleader action, which was filed in the Texas case after the trial court issued the divorce decree, rendered the divorce decree interlocutory and that the subsequent order granting Bank of America's interpleader on May 13, 2008, became the final Texas judgment. We disagree.

A judgment is final when it disposes of all claims and all parties, regardless of its language. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192-93, 200 (Tex. 2001). A judgment that determines all the equities or substantial merits of the case is not rendered interlocutory even though further proceedings may be necessary to execute the judgment or an incidental matter still remains to be settled. *See Ferguson v. Ferguson*, 338 S.W.2d 945, 947 (Tex. 1960) (quoting

---

[4] Galan also raises a sixth issue, but because we address the arguments from that issue within other issues in this opinion, we do not address his sixth issue separately.

*Hargrove v. Insurance Inv. Corp.*, 176 S.W.2d 744 (Tex. 1944)); *Beavers v. Beavers*, 651 S.W.2d 52, 53-54 (Tex. App.—Dallas 1983, no writ).

Here, the two parties involved in the Texas divorce action were Galan and Navarro. Bank of America simply managed an account that had already been divided between the parties in the final divorce decree. Specifically, the November 2007 Texas divorce decree awarded ownership of the Bank of America account to Navarro but awarded $550,000 of the funds in the account to Galan. On April 2, 2008, the trial court ordered Galan to transfer the funds in the Bank of America account into the registry of the court.[5] According to Bank of America's petition, which was filed on April 30, 2008, Galan had not yet complied with the trial court's April 2, 2008 order. Bank of America's petition also pointed out that Galan had made at least one attempt to transfer funds in the account during the divorce proceedings. Accordingly, with knowledge that an appeal of the trial court's divorce decree was pending in this Court, Bank of America filed an interpleader action requesting that Bank of America be removed as manager of the account. The trial court granted the interpleader on May 13, 2008.

The property at issue in the interpleader action was disposed of along with all parties and claims in the November 2007 divorce decree. Bank of America's later-filed interpleader action did not affect any part of the divorce decree. Thus, the divorce decree was a final judgment, and the interpleader action was merely an incidental matter that remained to be settled after the judgment was rendered. *See Ferguson*, 338 S.W.2d at 947; *Beavers*, 651 S.W.2d at 53-54. We therefore reject

---

[5] The record indicates that the April 2, 2008 order was based on an agreement between the parties but does not otherwise indicate why Galan was ordered to transfer the funds.

Galan's argument that the later-issued Mexico judgment rendered this appeal moot, and we overrule this issue.[6]

*Plea in Abatement*

Galan contends that the trial court erred in denying his plea in abatement. Specifically, he argues that Navarro did not establish the domiciliary and residency requirements necessary to maintain a suit for divorce. *See* Tex. Fam. Code Ann. § 6.301 (West 2006). Section 6.301 states that a suit for divorce may not be maintained in Texas unless, at the time suit is filed, either the petitioner or the respondent has been: (1) a domiciliary of Texas for the preceding six-month period; and (2) a resident of the county in which suit is filed for the preceding ninety-day period. *See id*.

Section 6.301 is not jurisdictional, but it is akin to a jurisdictional provision in that it controls a party's right to maintain a suit for divorce and is a mandatory requirement that the parties cannot waive. *See Reynolds v. Reynolds*, 86 S.W.3d 272, 276 (Tex. App.—Austin 2002, no pet.); *Oak v. Oak*, 814 S.W.2d 834, 837 (Tex. App.—Houston [14th Dist.] 1991, writ denied).

The residency and domiciliary requirements in section 6.301 are properly attacked by a plea in abatement. *See Reynolds*, 86 S.W.3d at 277; *Svensen v. Svensen*, 629 S.W.2d 97, 98

---

[6] We also note that in a related appeal, the Houston (First District) Court of Appeals recently issued an opinion vacating a judgment from a Harris County District Court that had granted Galan's petition to domesticate the April 2008 Mexico judgment. *See Sanchez v. Palau*, No. 01-08-00648-CV, 2010 Tex. App. LEXIS 4371, at *16-17 (Tex. App.—Houston [1st Dist.] June 10, 2010, no pet. h.). The appellate court held that the Uniform Foreign Country Money-Judgments Recognition Act—pursuant to which Galan had filed his petition seeking to domesticate the Mexico judgment—did not authorize the district court to recognize the judgment. *Id*. at *15. Thus, the Mexico judgment has not been domesticated in the Texas courts.

(Tex. App.—Dallas 1981, no writ). We review a trial court's ruling on a plea in abatement under an abuse of discretion standard. *See Dolenz v. Cont'l Nat'l Bank*, 620 S.W.2d 572, 575 (Tex. 1981); *Molano v. State*, 262 S.W.3d 554, 558 (Tex. App.—Corpus Christi 2008, no pet.). An abuse of discretion occurs when a trial court acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In the case of a plea in abatement, a trial court abuses its discretion if it acts arbitrarily or unreasonably in its ruling. *See Dolenz*, 620 S.W.2d at 575.

In Navarro's original divorce petition, which she filed on May 4, 2006, she alleged that she had been a domiciliary of Texas for the preceding six-month period and a resident of Travis County for the preceding ninety-day period. In the plea in abatement that Galan filed the day before trial, he alleged that Navarro's statements regarding her domicile and residence were untruthful. As proof of his claim, he attached to his plea in abatement portions of a deposition of Navarro and Galan's daughter, in which the daughter stated that Navarro traveled back and forth from Texas to Mexico during the six months before Navarro filed the divorce petition. Galan also attached a copy of Navarro's border-crossing card and copies of immigration documents explaining that the visa with which she entered the United States was issued for Mexican citizens who were temporarily visiting the United States as tourists. In addition, Galan attached an affidavit in which Navarro stated: "I am a Mexican citizen. I am domiciled in Texas but I have not sought permanent residency status in the United States."

At a hearing on Galan's plea in abatement and various other motions, the trial court asked Navarro's counsel for a response to Galan's plea. Navarro's counsel stated:

10

> [Navarro] has already testified that she was a resident of the State of Texas six months prior to the filing of this divorce petition and in Travis County a resident of the 90-day divorce petition [sic], that was established at the commencement of the hearing before Judge Dietz back in May '06. She will testify to those facts again when she takes the witness stand.

The trial court denied Galan's plea in abatement, finding that the plea was untimely under a local rule.[7]

Even if we were to assume that the trial court erred in denying Galan's plea in abatement, the proper remedy in sustaining a plea in abatement is not to dismiss the suit but to retain it on the docket so that it may be revived when the impediment is removed. *See Svensen*, 629 S.W.2d at 98; Black's Law Dictionary 1269 (9th ed. 2009) ("A defendant who successfully asserts a plea in abatement leaves the claim open for continuation in the current action or reassertion in a later action if the defect is cured."). Thus, even if the documents attached by Galan to his plea in abatement established that Navarro did not satisfy the domiciliary and residency requirements at the time she filed her divorce petition, nothing would have stopped her from satisfying the requirements at the time the plea in abatement was heard so as to cure any defect in her petition. At trial on the day following the hearing in November 2007, Navarro testified that she had been living at a house in Austin since September 2005. She testified that she went back and forth from Austin to Mexico "just for a few days" right after she moved to Austin but that it had been a long time since she traveled back to Mexico. She also testified that it had been her intent since she moved to Austin in September 2005 to live in Austin.

---

[7] The transcript of the May 2006 hearing referenced by Navarro's counsel at the hearing on the plea in abatement is not in the record.

During cross-examination, Navarro conceded that her visa was a "tourist visa" and that she had not sought permanent residency status in the United States. She also testified that at the time she filed her visa application, she informed government officials that her residence was in Mexico. However, section 6.301 requires only that a petitioner be a domiciliary of Texas and a resident of the county in which the suit is filed, not that she be a citizen of the United States or carry a certain type of visa. *See* Tex. Fam. Code Ann. § 6.301. Black's Law Dictionary defines "domiciliary" as "[a] person who resides in a particular place with the intention of making it a principal place of abode." Black's Law Dictionary 559 (9th ed. 2009). Navarro testified that she had lived in a house in Austin since September 2005 and that at the time of moving there, she intended to live there. Thus, she satisfies the definition of "domiciliary." Black's Law Dictionary defines "resident" as "[a] person who lives in a particular place" or "[a] person who has a home in a particular place." *Id*. at 1424. Regarding the second definition of "resident," Black's Law Dictionary adds: "a resident is not necessarily either a citizen or a domiciliary." *Id*. As previously stated, Navarro testified that she had lived in a house in Austin since September 2005. She therefore also satisfies the definition of a "resident."

Given all of the circumstances, we conclude that the trial court did not abuse its discretion in denying Galan's plea in abatement, *see Dolenz*, 620 S.W.2d at 575, and that in any case, Navarro satisfied the domiciliary and residency requirements at the time of trial. Accordingly, we overrule this issue.

### Sanctions

Galan asserts that the trial court erred in imposing sanctions prohibiting him from offering evidence at trial as to his separate-property claims. He contends that the trial court erred

12

in imposing the sanctions because: (1) there was not a pending motion for sanctions at the time the sanctions were imposed; (2) he was not given notice or a hearing before the sanctions were imposed; (3) he did in fact appear for his October 2, 2007 deposition but properly invoked his Fifth-Amendment right to remain silent; (4) at the time the trial court imposed the sanctions, it had no information regarding previously imposed sanctions; and (5) an October 15, 2007 order discharged Galan from all previous orders imposing sanctions.

A trial court's ruling on a motion for sanctions is reviewed for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." *Id*. at 838-39. The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id*. at 839. A trial court's discretion is limited by the requirements that sanctions be "just" and comport with due process. *See* Tex. R. Civ. P. 215.2(b); *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). For sanctions to be just, there must be a direct relationship between the offensive conduct and the sanction, and the sanction must not be excessive. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849 (Tex. 1992).

Here, the hearing at which the sanctions prohibiting Galan from offering evidence supporting his separate-property claims ("the final sanctions") were imposed took place on November 5, 2007, the day before trial. At that point in the pre-trial proceedings, the trial court had already warned Galan on multiple occasions to comply with discovery requests and had imposed sanctions for his failure to do so. Specifically, after an April 2007 hearing on a motion to compel,

13

the trial court found that Galan had "wholly failed to respond or to object to any of [the] properly served discovery requests" and "wholly failed to complete and exchange his Sworn Inventory and Appraisement." The trial court ordered Galan to provide the documents by a certain date and to pay the attorney's fees Navarro incurred in bringing the motion. At a hearing on Navarro's second motion to compel and motion for sanctions in May 2007, Galan's counsel requested thirty more days to respond to the discovery requests. The trial court granted the request but stated: "This [order] needs to be complied with and not before the Court again. And if it is [before the court again], then I would certainly encourage significant sanctions."

In July 2007, the trial court held a hearing on Navarro's third motion to compel and motion for sanctions and found that Galan failed to comply with the trial court's previous order. As sanctions, the trial court prohibited Galan from offering any documentary evidence in support of his separate-property claims unless the evidence was produced prior to July 19, 2007, the day the order was signed.

At a hearing on August 24, 2007—this time regarding a motion for enforcement of the trial court's July 19, 2007 order, motion to compel depositions, and motion for sanctions—Navarro's counsel informed the trial court that Galan had not yet complied with previous court orders to make mortgage payments, pay property taxes, and pay Navarro temporary support and interim attorney's fees. Navarro's counsel requested that the trial court create a new deadline for Galan to comply, and the trial court declined, stating:

> I'm telling you that moving the date is just not very effective. And so—I'm not
> inclined to do that, because I don't think that's the way to enforce my order. I think
> the way to enforce my order is to get his attention and make sure he understands that

14

there are consequences to the failure to follow a court order. And moving the date isn't a consequence that I think makes sense. [Galan's counsel], you need to advise your client . . . that it is very possible that he will go to jail for violation of this court's order and that I'm very serious about that. I don't know that I'll put him in jail. I'm not making a decision about that yet. I'm telling you that I don't think that moving the date makes a lick of sense. He's already had a date. It's come and gone. And I'm very serious about enforcing my own court orders, and I will very much consider putting him in jail if he doesn't comply with it.

After the hearing, the trial court denied Navarro's motion for sanctions but granted her motion to compel depositions. The trial court ordered, among other things, that Galan be deposed on September 4, 2007. Galan did not appear for his deposition as ordered.

The next order regarding a deposition setting for Galan occurred at a hearing on September 10, 2007. At the hearing, the trial court ordered that Galan appear for his deposition on September 18, 2007. Galan did not appear for his deposition as ordered. At a subsequent hearing on September 27, 2007, the trial court found that Galan failed to comply with four court orders by not responding to discovery requests and not paying monetary sanctions. The court further sanctioned Galan, ordering that he was prohibited from offering any evidence regarding his separate-property claims unless the evidence was produced prior to the close of discovery on September 21, 2007. In a separate order, the trial court also found that Galan failed to appear for two depositions and ordered him to appear on October 2, 2007. The court further ordered that if Galan did not appear for his deposition on October 2, 2007, he would be prohibited from offering any evidence of his affirmative claims.

When Galan arrived with his counsel for his deposition on October 2, 2007, he was served with a motion for enforcement of previous court orders by contempt, alleging that he had not

15

responded to discovery requests, paid monetary sanctions, or appeared for depositions as ordered. Because the motion requested that Galan be jailed for noncompliance, Galan claimed a Fifth Amendment right not to incriminate himself and left without testifying.

At an October 15, 2007 hearing regarding various motions, the trial court sanctioned Galan for his failure to respond to Navarro's second set of interrogatories by ordering that Galan's experts were prohibited from testifying as to any impressions or opinions that had not been disclosed as of the date of the hearing. At the same hearing, Navarro offered to withdraw her request for jail time with prejudice as long as Galan appeared for his deposition on October 17, 2007, and Galan agreed. Accordingly, the trial court ordered Galan to appear and testify at his deposition on October 17, 2007. One of the motions for which the hearing was held was a motion for sanctions filed by Navarro. The trial court deferred its ruling on the motion, stating:

> With regard to the pending motion for sanctions, I'm going to remain that—keep that under advisement until after the October 17[th] deposition.
>
> If he does not give his deposition . . . on October 17th, I will take up that motion for sanctions; and if he does but it's incomplete in some way or something, I'll, again, deal with that at that time. But you should, as you prepare and since your deadline for preparation of documents and exchange of information and so forth has been extended until Friday, you should both just continue to assume that all the issues that have always been in the case are still in the case and operate accordingly. Better to over prepare than to under prepare. And I appreciate that this might create some inconvenience to you, but I'm not going to decide that till I know whether or not he cooperates at his deposition.
>
> And I've said before and I've made rulings before about whether or not certain evidence is going to be able to be offered and certain people will be allowed to testify and so forth, depending on whether or not they give depositions and so on. And I'm not changing any of those rulings. I just want to keep my options open for further sanctions, if necessary, in the event that he does not cooperate on October 17th. But that one will stay pending.

Galan did not appear for his deposition on October 17, 2007, claiming that he was ill and under doctor's orders to stay in bed.

The next hearing was on November 5, 2007, during which the trial court imposed the final sanctions that Galan complains about on appeal. The district judge who presided at the hearing, Judge Byrne, had not presided at any of the previous hearings. At the hearing, Navarro's counsel explained to Judge Byrne that other district judges had ordered Galan to appear for his deposition four times but that he still had not done so. Galan's counsel explained that Galan appeared on the third date on which he was ordered to appear, October 2, 2007, but refused to answer questions because, upon his arrival, a process server served him with a show-cause order that threatened jail time if he did not appear in court and explain why he had not made certain payments mandated by the court. Galan's counsel stated that he had advised Galan to assert his Fifth Amendment right to remain silent. Judge Byrne stated that she did not understand why Galan could not have answered questions about the identification and valuation of property related to the divorce and then assert his Fifth Amendment right only when he was asked questions about his failure to pay court-ordered amounts of money. Galan's counsel stated that he felt that Galan could assert the privilege for all questions.[8]

---

[8] A similar discussion occurred between Judge Livingston and Galan's counsel during the October 4, 2007, hearing in which Judge Livingston deferred her ruling on Navarro's motion for sanctions and ordered Galan to appear for his deposition on October 17, 2007. Judge Livingston explained her position regarding Galan's refusal to testify on October 2, 2007, as follows:

[Navarro's counsel] can take [Galan's] deposition for eight and a half hours, and in the last 30 minutes if she asks a question that might incriminate him, he can invoke his right against self-incrimination at that time. He can ask—she can ask the first question of the deposition that he thinks requires him to invoke his privilege. He can

Navarro's counsel also explained to Judge Byrne that the most recent order, which was issued by Judge Livingston on October 15, 2007, ordered Galan to appear for his deposition on October 17, 2007. She informed Judge Byrne that Galan did not appear as ordered on October 17, claiming he was ill. Judge Byrne focused on Judge Livingston's October 4, 2007 order[9] and the pending motion for sanctions, which led to the following exchange between the trial court and Galan's counsel:

> Court:      The order reads specifically as follows: The Court further orders that if respondent, Mr. Galan, fails to appear for his oral deposition on October 2nd, 2007 in the offices of Gray & Becker at 9:00 a.m. that he will be sanctioned as follows: Respondent Galan is prohibited from offering any evidence, whether or not produced, of any affirmative claim in this matter. What is your response?

invoke it on question number 1. He can invoke it on question number 101. He can invoke it whenever it's applicable . . . .

I'm just telling you that there is no relationship whatsoever to the property issues that [are] going to be the subject in front of this jury about the division—the character of the property and the division of the property, let alone his affirmative claims . . . [N]one of that is going to incriminate him in any way. And he's not suggested without divulging any confidences, which I'm not certainly asking you to do, but there is no relationship that's obvious between his claims for affirmative relief or hers with regard to the division of the property or the character of the property that would incriminate him in any way. So her filing an enforcement action to enforce the terms of a temporary order [has] absolutely nothing to do with the ultimate issues that have to be decided by the jury in the divorce case.

[9] The order was signed by Judge Livingston on October 2, 2007, and filed on October 4, 2007, but the content of the order was based on Judge Livingston's verbal ruling at a hearing on September 27, 2007. Because there was a delay in filing the order, the order gives the appearance that the trial court ordered Galan to appear at a deposition that occurred two days before the order was issued. In reality, however, the trial court expressed its verbal order on September 27, 2007, several days before the October 2, 2007 deposition date.

18

Counsel: Your Honor, that was heard by—that's a motion that's being carried by the court, it was heard by Judge Livingston when [Navarro's counsel] filed. That was the hearing in which I asked [Navarro's counsel] to withdraw the show cause and he would appear immediately to testify. And Judge Livingston after hearing all of the argument, decided not to rule on it. So there is no order as of yet. As of that request we actually had a hearing in front of Judge Livingston there and we—

Court: You don't have a ruling. Okay. The Court grants the sanctions and that Mr. Galan will be prohibited from offering any evidence of any affirmative claim in this matter for his violation of the October 2nd, 2007 [sic] order for failing to appear and answer questions at a deposition.

In a written order memorializing the trial court's verbal ruling, the trial court found that: (1) monetary sanctions were imposed on Galan on May 10, 2007 for failure to answer written discovery; (2) sanctions were imposed on Galan on July 19, 2007, prohibiting him from offering any documentary evidence as to his separate-property claims if the evidence was not produced by July 19, 2007; (3) sanctions were imposed on Galan again on October 4, 2007, prohibiting him from offering any evidence of his separate-property claims if the evidence was not produced by September 21, 2007; (4) Galan was ordered to appear for his deposition on four separate dates but failed to appear for any of them; (5) Galan was ordered to appear for his deposition on October 2, 2007, and was warned that if he failed to appear, he would be prohibited from offering any evidence of any of his affirmative claims; (6) Galan failed to appear and be deposed on October 2, 2007; and (7) lesser sanctions had been imposed on Galan but failed to result in his compliance with court orders. Accordingly, the trial court ordered that Galan was "hereby sanctioned for abuse of the discovery process and for failure to appear for oral deposition on four

19

separate dates as ordered, said sanctions to be a prohibition against [Galan] offering any evidence as to any affirmative claim at trial, including his claim of separate property upon which [he] has the burden of proof."

In his first argument regarding the final sanctions, Galan contends that there was not a pending motion for sanctions at the time the final sanctions were imposed. Galan argues that a First Amended Motion for Sanctions filed by Navarro was withdrawn by Navarro's counsel at a hearing on October 4, 2007, and that it was also stricken by the trial court, thus leaving no pending motion for sanctions. However, Galan does not accurately depict what occurred at the hearing. According to a transcript of the hearing, Galan objected to Navarro's first amended motion for sanctions, claiming he did not have enough notice that the motion would be addressed at the hearing. The trial court sustained Galan's objection but noted that there was no objection to Navarro's original motion for sanctions and that there was no reason why the court could not hear the original motion at that time. Navarro's counsel stated that she was withdrawing the amended motion and was ready to proceed on the original motion. Galan's counsel objected, stating that the original motion became void as of the moment the amended motion was filed. The trial court overruled his objection, stating that the amended motion no longer existed because it had been withdrawn and was stricken for all purposes, thus leaving the original motion intact. The trial court then considered the original motion.

Ultimately, the trial court stated that it would defer its ruling on the motion for sanctions, taking it "under advisement," until after it ruled on Navarro's motion for summary judgment. Thus, the motion for sanctions was still pending at the close of the October 4, 2007,

20

hearing. Accordingly, we reject Galan's argument that there was no motion for sanctions pending when the trial court imposed the final sanctions on November 5, 2007.

In his second argument, Galan asserts that he was not given notice or a hearing before the final sanctions were imposed on November 5, 2007. However, Galan had considerable notice that the final sanctions were a possibility and several hearings on the matter before the final November 5, 2007 hearing. As we have already described in detail, Galan was repeatedly sanctioned by the trial court throughout the pre-trial proceedings for his failure to answer discovery requests and appear at his deposition. Sanctions regarding prohibitions on aspects of his separate-property claims began at a hearing on July 19, 2007, at which the trial court sanctioned Galan by prohibiting him from offering any documentary evidence in support of his separate-property claims unless the evidence was produced by July 19, 2007. Galan was similarly sanctioned after a hearing on September 27, 2007, at which the trial court prohibited him from offering any evidence of his separate-property claims unless the evidence was produced by September 21, 2007. Also at the September 27, 2007 hearing and in an order memorializing the trial court's ruling at the hearing, the trial court explicitly warned Galan that if he did not appear for his deposition on October 2, 2007, he would be prohibited from offering any evidence of any of his affirmative claims.

At the November 5, 2007 hearing, the trial court learned that Galan had appeared for his deposition on October 2, 2007, but had refused to answer questions, asserting his Fifth Amendment right to remain silent based on a show-cause order served on him upon his arrival. The trial court disagreed with Galan's position that he could not have answered the questions relating

21

only to the property involved in the divorce proceedings, and the trial court found that Galan had not appeared for his deposition as ordered.

Given all of the hearings that the trial court conducted based on Galan's failure to follow court orders—including the hearing on November 5, 2007, when the final sanctions were imposed—and considering the multitude of sanctions imposed on Galan and the explicit warnings given to him by the trial court that he would be prohibited from offering evidence as to his separate-property claims if he did not comply with court orders, we reject Galan's argument that he did not receive notice and a hearing before the imposition of the final sanctions.[10]

---

[10] To the extent that Galan argues that the trial court's sanctions violated constitutional due process because they were merits-based sanctions, we reject the argument. Although the sanctions were severe, the Texas Supreme Court has said that a trial court may impose merits-based sanctions when a party shows flagrant bad faith or counsel shows callous disregard for the responsibilities of discovery under the rules; when a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit; and when the sanctions are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003); *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991).

Here, as we have already detailed at length in the opinion, the trial court held several hearings at which it found that Galan had not complied with discovery requests or court orders to respond to discovery requests. The trial court warned Galan that it would impose significant sanctions and even consider sending him to jail if he continued to fail to comply with court orders. Galan still did not comply. Eventually, the trial court began limiting the evidence that Galan could offer at trial in support of his separate-property claims, and finally, the trial court prohibited Galan from offering any evidence in support of his separate-property claims. Given that Galan repeatedly failed to comply with court orders despite the trial court's warnings, we conclude that the trial court did not abuse its discretion in determining that Galan showed flagrant bad faith. Further, the trial court imposed lesser sanctions—monetary sanctions and limitations on the evidence Galan could offer at trial in support of his separate-property claims—and Galan continued to disregard court orders, making it apparent that lesser sanctions were not promoting compliance with the discovery rules and justifying a presumption that his separate-property claim lacked merit. *See TransAmerican*, 811 S.W.2d at 918 ("[I]f a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it."). Accordingly, we conclude that the trial court did not violate constitutional due process in

In his third argument, Galan contends that he should not have been sanctioned based on his failure to testify at his October 2, 2007 deposition because he properly relied on his Fifth Amendment right to remain silent in refusing to testify. However, Galan does not cite to any legal authority in support of his argument. Accordingly, he waives this argument. *See* Tex. R. App. P. 38.1(i). We also note that the trial court informed Galan on more than one occasion that he could have answered questions relating to the identification of and valuation of property involved in the divorce and asserted his Fifth Amendment right only when asked questions regarding his failure to comply with court-ordered payments. In addition, the trial court did not impose the final sanctions based solely on Galan's refusal to testify on October 2. In imposing the sanctions, the trial court recited each of the times that Galan was sanctioned for failure to answer discovery requests or failure to appear at his deposition and specifically stated that he was sanctioned "for abuse of the discovery process and for failure to appear for oral deposition on four separate dates as ordered." Accordingly, we reject this argument.[11]

---

imposing merits-based sanctions in this case. *See id*.; *Mayer*, 104 S.W.3d at 882.

[11] Regarding Galan's refusal to testify at his October 2, 2007 deposition, Galan also asserts that the trial court should have sanctioned his trial counsel rather than him because he was simply following his trial counsel's advice in asserting his Fifth-Amendment right to remain silent. Galan is correct in his assertion that a trial court may impose sanctions exclusively on an attorney if the evidence demonstrates that the offensive conduct is attributable to counsel alone. *See American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006). However, an appellate court must review the entire record in determining whether the trial court abused its discretion in imposing sanctions, *see id*. at 583, and the entire record reveals that Galan repeatedly flouted court orders regarding the discovery process. Even if Galan's attorney was solely responsible for Galan's refusal to testify on October 2, 2007, Galan's actions at that particular deposition setting are only one of the many actions for which he was sanctioned. Accordingly, we reject this argument.

23

In his fourth argument, Galan asserts that Judge Byrne should not have imposed the final sanctions because she was not the presiding judge at the previous hearings and had not considered any evidence or arguments regarding previously imposed sanctions. However, the record shows that Judge Byrne considered at least two previous orders that imposed sanctions involving Galan's affirmative claims. The transcript from the hearing held on November 5, 2007, shows that Judge Byrne considered a July 19, 2007 order in which Galan was found to have failed to respond to discovery requests and prohibited from offering any documentary evidence in support of his separate-property claims unless the evidence was produced to Navarro before July 19, 2007. The transcript also shows that Judge Byrne considered the October 4, 2007 order in which the trial court found that Galan failed to appear for two court-ordered depositions, ordered him to appear on October 2, 2007, and warned that he would be prohibited from offering any evidence of any of his affirmative claims if he did not appear for his deposition on October 2, 2007. In addition, the order Judge Byrne issued after the hearing indicated that she considered the entire record because the order listed all of the previous sanctions imposed on Galan before the imposition of the final sanctions.

We also note that Galan requested on April 30, 2007, that the trial court take judicial notice of adjudicative facts in the case, including all documents presently in the court's file, all documents that would later become part of the court's file, and all findings of fact and conclusions of law that were issued in any orders or judgments in the case. Further, Galan does not cite to, and we have not found, any legal authority for the proposition that a district judge operating within a centralized, rotating docket system cannot issue a ruling on a motion if he or she did not preside over

24

previous pre-trial hearings or directly hear all of the same evidence that each of the previous district judges heard. We therefore overrule this argument.[12]

In his fifth argument, Galan contends that the trial court erred in imposing the final sanctions because an October 15, 2007 order discharged Galan from all previous orders imposing sanctions. We disagree with Galan's characterization of the October 15, 2007 order. The order was based on the trial court's ruling at a hearing that took place the same day. At the hearing, the trial court addressed a writ of habeas corpus filed by Galan regarding Navarro's show-cause order and her request in the order that Galan serve jail time for not complying with court orders. Navarro offered to withdraw the request for jail time with prejudice as long as Galan appeared for his deposition on October 17, 2007, and made all of the payments he had been ordered to make. The trial court asked the parties if they could come to an agreement in which Galan agreed to appear for

---

[12] Galan also alleges within this argument that Judge Byrne was unaware that Judge Livingston already considered the same evidence—Galan's assertion of his Fifth-Amendment right to remain silent on October 2, 2007—at a hearing on October 4, 2007, and that Judge Livingston "refused" to impose the same sanctions that Judge Byrne later imposed. However, Galan inaccurately summarizes the record. At the hearing before Judge Livingston on October 4, 2007, Judge Livingston heard arguments regarding Navarro's motion for partial summary judgment, which was directed at Galan's affirmative claims. Judge Livingston also heard arguments regarding Navarro's motion for sanctions, in which Navarro asked the court to prohibit Galan from offering any evidence regarding any of his affirmative claims. After hearing arguments on both motions, Judge Livingston explained that she would not rule on the motion for sanctions until after she ruled on the motion for summary judgment. Specifically, she stated:

> I'm going to . . . wait until I've looked at the summary judgment, because to the extent that the summary judgment might be granted, then your motion would only apply to those affirmative claims of Mr. Galan that are still at issue. If your—if the motion for summary judgment is denied, then it would apply to whichever ones it's denied as to.

Thus, Judge Livingston did not "refuse" to grant Navarro's motion for sanctions but rather deferred her ruling until a later date.

25

his deposition if Navarro agreed to withdraw her request for jail time. The parties ultimately reached an agreement that was memorialized in the following order:

> Relief is GRANTED by agreement on [Galan's] application for pre-trial writ of habeas corpus. [Galan] is in all things discharged from the show cause order of October 1, 2007, and the events and allegations contained therein. [Galan] shall appear, be sworn in and testify at his deposition on October 17th 2007 at 9 a.m. at the offices of Gray & Becker, subject to any privileges asserted.

Galan contends in his brief that the order discharges him "not only from the October 2nd 2007 order . . . but from all previous orders of sanctions referenced in Navarro's Show Cause Order." His position seems to be that the order discharges all previous sanctions orders because the previous orders were referenced in and attached to the show-cause order. Thus, he appears to argue, when the trial court ordered that Galan be discharged from the show-cause order and all events and allegations contained in the order, the trial court was also discharging him from all the orders referenced in and attached to the order. However, such an interpretation is not consistent with the language of the order or what occurred at the hearing. The language of the order states that Galan was discharged from the show-cause order and its contents. The order states nothing about discharging previous orders imposing sanctions. In addition, at no time in the hearing did the trial court indicate that the agreement between the parties represented a discharge of all previous orders imposing sanctions. The trial court indicated only that the agreement would dispose of Galan's writ of habeas corpus and require him to appear for his deposition on October 17, 2007. Further, at the end of the hearing, the trial court stated that it was keeping "the pending motion for sanctions . . . under advisement until after the October 17 deposition." As quoted previously, the trial court also went on to state:

26

And I've said before and I've made rulings before about whether or not certain evidence is going to be able to be offered and certain people will be allowed to testify and so forth, depending on whether or not they give depositions and so on. And I'm not changing any of those rulings. I just want to keep my options open for further sanctions, if necessary, in the event that [Galan] does not cooperate on October 17th.

Because the record does not indicate that the October 15, 2007 order discharged Galan from all previous orders imposing sanctions, we reject Galan's argument.

Having rejected all of Galan's arguments regarding the trial court's imposition of the final sanctions, and considering Galan's repeated refusal to comply with court orders despite numerous threats of sanctions, opportunities to comply, and the imposition of lesser sanctions, we conclude that the trial court did not abuse its discretion in imposing the final sanctions.[13] *See* Tex. R. Civ. P. 215.2(b); *TransAmerican*, 811 S.W.2d at 917; *Cire*, 134 S.W.3d at 838-39.

---

[13] The dissent argues that the trial court failed to accord Galan due process by violating the principle that a Texas trial court may not divest a party of his or her separate property. *See Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139-40 (Tex. 1977). We note that the trial court acted upon Galan's separate-property *claim*, not upon property previously determined to be separate property. The rules of civil procedure specifically authorize a trial court to enter orders refusing to allow a party who has not complied with discovery requests or discovery orders to support a designated claim or prohibiting the party from introducing certain matters into evidence. *See* Tex. R. Civ. P. 215.2(b)(4). We also note that there are many instances in which a separate-property claim may be waived or barred without violating legal principles. *See Knight v. Knight*, 301 S.W.3d 723, 730 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (separate-property claim waived by failure to object); *Peck v. Peck*, 172 S.W.3d 26, 31-32 (Tex. App.—Dallas 2005, pet. denied) (separate-property claim barred because of judicial admission); *Dutton v. Dutton*, 18 S.W.3d 849, 853 (Tex. App.—Eastland 2000, pet. denied) (same); *Mathis v. Mathis*, No. 04-95-00386-CV, 1996 Tex. App. LEXIS 5102, at *13 (Tex. App.—San Antonio Nov. 20, 1996, no writ) (not designated for publication) (separate-property claim waived by entering into agreed judgment).

27

*Characterization of Marital Property*

Galan asserts that the trial court erred in characterizing the marital estate as community property because there was no evidence, or insufficient evidence, that the estate was community property. Galan contends that Navarro "failed to meet her burden" of proving that the marital property "was not Galan's separate property." However, Navarro had no such burden. To the contrary, all property possessed by either spouse during or on dissolution of marriage in Texas is presumed to be community property. *See* Tex. Fam. Code Ann. § 3.003 (West 2006). To overcome the community-property presumption, the spouse attempting to do so must present clear and convincing evidence that the property is separate property. *See id.*; *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.). We therefore review the trial court's characterization based on the clear and convincing evidence standard. *See Tate v. Tate*, 55 S.W.3d 1, 5 (Tex. App.—El Paso 2000, no pet.).

Here, based on sanctions that we have previously upheld in this opinion, Galan was prohibited from offering any evidence showing that any of the property involved in the divorce was his separate property. Because we have upheld the sanctions, we will not consider any of the offers of proof Galan made as to his separate-property claims. Despite the ban on evidence of his separate-property claims, however, Galan contends that he established that much of the property involved in the divorce was his separate property based on evidence that was not excluded by the ban: specifically, portions of the petition for divorce that Navarro initially filed in Mexico in 2003 and portions of Navarro's testimony at trial. Galan quotes several parts of Navarro's Mexico petition in which she stated that she was married "under the regime of separate property" and that Galan was the owner of the assets the couple acquired during their marriage. At trial, Galan's counsel asked

28

Navarro to confirm that she made the statements in the Mexico petition, and she confirmed that she made each statement. The following exchange then occurred:

> Galan's Counsel: As to what is listed in the petition, as to those items, is it your understanding that at the time of the filing of the divorce petition all the items that we have described belonged to [Galan]?
>
> Navarro: Yes.

Galan contends that the statements in Navarro's Mexico petition and the statements she made at trial establish by clear and convincing evidence that the property involved in the divorce was his separate property. We disagree.

In order to prove certain assets are separate property, a spouse must trace and clearly identify the property claimed to be separate. *See McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973); *Zagorski v. Zagorski*, 116 S.W.3d 309, 316 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Zagorski*, 116 S.W.3d at 316; *In re Parker*, 997 S.W.2d 833, 837 (Tex. App.—Texarkana 1999, pet. denied). Here, Galan has established only that Navarro stated that she and Galan were married under a separate-property regime in Mexico and that at the time she filed a divorce petition in Mexico in 2003, she felt that all of the property acquired during the marriage was "owned" by Galan and "belonged" to him. Galan points to no evidence admitted at trial establishing what a "separate-property regime" means under Mexican law. He also points to no evidence tracing the origins of each piece of property. Rather, he contends that Navarro's statements in her Mexico petition were

29

judicial admissions that the property was Galan's separate property. A judicial admission is an assertion of fact, not pled in the alternative, in the live pleadings of a party. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001). However, the pleading that Galan refers to is a petition from a divorce suit in Mexico in which the Mexico court determined that Navarro was not entitled to a divorce. Galan does not cite to, nor have we found, any legal authority establishing that a foreign pleading in a divorce suit that was resolved without granting a divorce constitutes a live pleading in a Texas case.[14]

Considering the lack of evidence in the record to rebut the community-property presumption, we conclude that Galan did not prove by clear and convincing evidence that the property involved in the divorce was his separate property. Accordingly, the trial court did not abuse its discretion in characterizing the property as community property.

### Sufficiency of Evidence Supporting Findings of Fact

Galan challenges fifty-three of the trial court's findings of fact and argues that the trial court erred in denying his request for findings of fact and conclusions of law regarding the characterization and value of the separate property of Galan and Navarro.[15] Forty-three of the challenged findings relate to Galan's failure to respond to discovery requests or pay monetary sanctions. Galan makes the following one-sentence argument regarding the findings: "Those matters

---

[14] Galan also raises an estoppel argument regarding the Mexico petition in his reply brief. However, we do not consider the argument because he did not raise the issue in his brief, nor was the issue raised in Navarro's brief. *See* Tex. R. App. P. 38.3 ("The appellant may file a reply brief addressing any matter in the appellee's brief.").

[15] Galan states in his brief that he is challenging various findings of fact and conclusions of law, but he lists only findings of fact in his argument.

30

all dealt with specific discovery disputes over which [Judge Byrne] did not preside and which involved matters not considered at the pretrial or trial of the case." However, like the first time Galan made this argument in this appeal, he does not cite to, and we have not found, any legal authority supporting the proposition that a district judge operating within a centralized, rotating docket system cannot issue findings of fact based on the entire case if she did not preside over every hearing in the case. Further, Galan specifically requested on April 30, 2007, that the trial court take judicial notice of adjudicative facts in the case, including all documents presently in the court's file, all documents that would later become part of the court's file, and all findings of fact and conclusions of law that were issued in any orders or judgments in the case. Galan made the same request—specifically, that the trial court "take judicial notice of its file"—at a pretrial hearing on November 5, 2007, and the trial court stated that it would "be happy to take judicial notice of those court orders in its file." Because we find no support for Galan's position, we reject his argument.[16]

---

[16] Galan raises this argument a third time as a separate issue in his brief. In the issue, he makes the same argument he did in the issue challenging the sanctions that prohibited him from offering evidence as to his separate-property claims. He argues that Judge Byrne erred in imposing the sanctions and issuing findings of fact in support of the sanctions because she had not presided over all the previous pre-trial hearings. In support of his argument, Galan cites rules and cases involving the authority of a newly assigned judge to act on motions or judgments that are pending due to the expiration of a previous judge's term or due to a previous judge's death, resignation, or disability. He also cites a case in which the appellate court vacated a judgment because a judge signed the judgment without hearing any of the evidence in the case. *See W.C. Banks, Inc. v. Team, Inc.*, 783 S.W.2d 783, 785-86 (Tex. App.—Houston [1st Dist.] 1999, no writ).

We do not address this argument as a separate issue because we have already addressed it twice in the opinion. However, we note that the authorities cited by Galan are distinguishable from this case. Specifically, this case does not involve a judge who was assigned to a pending case because another judge's term had expired or because another judge died, resigned, or became disabled. This case also does not involve a judge who signed a final judgment after a trial but had not heard any evidence in the case. Judge Byrne presided at a pre-trial hearing and at trial and took judicial notice of all matters in the case file. In addition, and as we have previously stated, this case involves a centralized, rotating docket system in which various district judges preside over numerous

31

For another of the challenged findings—specifically, the finding that Navarro satisfied the residence and domiciliary requirements necessary to bring a divorce suit in Texas—Galan refers to his arguments in support of his first issue challenging the trial court's denial of his plea in abatement. Because we have already overruled that issue, we affirm the trial court's findings with respect to the issue. Similarly, for another subset of the challenged findings—those regarding Galan's failure to appear for depositions on three separate occasions—Galan refers to his arguments in support of his third issue challenging the trial court's imposition of sanctions prohibiting Galan from offering evidence regarding his separate-property claims. Because we have previously upheld the sanctions, we affirm the trial court's findings with respect to that issue.

Regarding the remaining four challenged findings of fact, Galan provides only a one-sentence argument and fails to cite to any legal authority. Accordingly, we conclude that he has waived the arguments. *See Taylor v. State*, 293 S.W.3d 913, 917 (Tex. App.—Austin 2009, no pet.) ("Brief, conclusory statements, unsupported by legal citations, are insufficient to sustain an appellant's complaint."); *see also* Tex. R. App. P. 38.1(i) (requiring briefs to contain clear and concise argument for contentions made and appropriate citations to authorities and record).

Galan also contends that the trial court erred in denying his request for findings of fact and conclusions of law regarding "the characterization and value" of his and Navarro's separate property. However, the trial court did not issue findings of fact and conclusions of law regarding the separate property of Galan and Navarro because the trial court determined that all of the property

---

hearings and trials. Galan does not cite to any legal authority in support of his claim that a district judge in such a system cannot rule on ongoing issues unless she has directly heard all of the evidence presented in previous hearings held by other judges. Accordingly, we again reject this argument.

32

was community property.  Galan was prohibited from offering any evidence regarding his separate-property claims, and Navarro did not make any separate-property claims.  Because the trial court treated all the property as community property and there was no evidence of separate property, we reject Galan's argument.

## CONCLUSION

Having overruled each of Galan's issues, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton and Onion*;
   Dissenting Opinion by Justice Onion

Affirmed

Filed:  November 10, 2010

* Before John F. Onion, Jr., Presiding Judge (retired), Texas Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

33