# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00212-CV

**Gretchen Ann Hazard Reynolds, Appellant**

**v.**

**Charles Wilson Reynolds, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. GN-000857, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

The district court granted appellee Charles Wilson Reynolds (ACharles@) summary judgment declaring that he and appellant Gretchen Ann Hazard Reynolds (AGretchen@) are not common law, or informally, married pursuant to Texas law. *See* Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. ' 37.001-.011 (West 1997 & Supp. 2002). By two issues, Gretchen contends that the district court erred because genuine issues of material fact exist regarding (1) when the statute of limitations began to run on her claim to establish an informal marriage, and (2) her affirmative defense of equitable estoppel. Because we hold that the district court lacked jurisdiction to grant Charles the relief he sought, we reverse the district-court judgment and dismiss the cause.

## BACKGROUND

Although the parties disagree as to the circumstances of their relationship, they do agree that, before March 11, 1979, they had been living together in Texas. Gretchen alleges that on that date, in Austin, she and Charles Aannounced to friends and family members who were present that we were married and were going to live the rest of our lives as husband and wife.@[1] In May they left Texas and in January 1980, settled in Virginia, where both currently reside. Two children were born to Charles and Gretchen. According to Charles, the parties ceased cohabiting in June 1992, when Gretchen moved out of their home and never returned; Gretchen asserts that they stopped living together and were last intimate in October 1992. Charles asserts that in December 1992, Gretchen began cohabiting with another man, an assertion Gretchen denies. In May 1997, Charles told Gretchen that their separate living arrangements were permanent and that they Ashould@ each marry others. On June 20, 1999, Charles married another. The next day, Gretchen threatened to sue Charles for divorce. She made a Afinal settlement offer@ in January 2000, and on March 23, Charles filed this declaratory-judgment action in the Texas district court, alleging that Aany assertion or claim that the parties were informally married in Texas prior to their departure from the state in 1979, is barred by the applicable statute of limitations@; and he asked the court to Arender a

---

[1] At this time, Texas law provided that the existence of an informal marriage, often referred to as a Acommon-law marriage,@ could be proved Aby evidence that . . . they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.@ Act of June 2, 1969, 61st Leg., R.S., ch. 888, ' 1, 1969 Tex. Gen. Laws 2707, 2717. The marriage could be proved in Aany judicial, administrative, or other proceeding.@ *Id.* The law did not provide a limitation period within which a party to an informal marriage was required to bring an action to present proof of the marriage.

declaratory judgment establishing, as a matter of law, that [the parties] are not married.@[2] Gretchen

responded on April 5 by suing Charles for divorce in Virginia.  Her ABill of Complaint@ alleges that

---

[2] In 1989, after Charles and Gretchen had moved to Virginia, the legislature amended the law to provide AA proceeding in which a[n informal] marriage is to be proved . . . must be commenced not later than one year after the date on which the relationship ended.@ Act of May 29, 1989, 71st Leg., R.S., ch. 369, ' 9, 1989 Tex. Gen. Laws 1458, 1461.

The legislature again amended the law in 1997 to provide: AIf a proceeding in which a[n informal] marriage is to be proved . . . is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married.@ Act of May 24, 1995, 74th Leg., R.S., ch. 891, ' 1, 1995 Tex. Gen. Laws 4404, 4404 (codified Tex. Fam. Code Ann. ' 2.401(b) (West 1998)).  The amendment took effect September 1, 1995.  *Id.* ' 2(a) at 4404.  The amendment, however, states that it Adoes not permit an action to be commenced on or after [September 1, 1995] to prove the existence of an informal marriage for which an action was barred before [September 1, 1995] for failure to bring the action before the first anniversary of the date the relationship ended.@ *Id.* ' 2(c) at 4404.  Charles argues that because the parties agree that they ceased to *live together* in 1992, the one-year limitation provision of the 1989 amendment applies.  Gretchen asserts that, although they were under different roofs, she and Charles maintained a *relationship* until Charles remarried in 1999 and thus the two-year statute applies.

she and Charles Awere married on the 10th day of March, 1979, in Austin, Texas . . . [and f]rom the wedding ceremony on March 10, 1979 until the parties separated in June of 1997, they cohabited together as husband and wife and represented to the world that they were husband and wife.@ However, Gretchen=s affidavit in opposition to Charles=s motion for summary judgment avers that they Aseparated@ in 1992.

On March 26, 2001, following a hearing, the Texas district court granted summary judgment for Charles in this cause, declaring that Charles and Gretchen Aare not husband and wife under the laws of the state of Texas.@

## DISCUSSION

### Jurisdiction

Neither party has raised the question of whether the district court possessed jurisdiction over Charles=s suit for declaratory judgment. We may consider the district court=s jurisdiction *sua sponte*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998) (citing *Texas Ass=n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444-45 (Tex. 1993), for proposition that Asubject matter jurisdiction cannot be waived and may be raised for the first time on appeal by the parties or by the court@); *see also* W. Wendell Hall, *Standards of Review in Texas*, 29 St. Mary=s L.J. 351, 373 n.85 (1998) (citing *Mayhew* as Aindicating that lack of subject matter jurisdiction can be raised sua sponte by the appellate court@). Whether a trial court has subject-matter jurisdiction is a question of law subject to *de novo* review. *Mayhew*, 964 S.W.2d at 928; *Paulsen v. Texas Equal Access to Justice Found.*, 23 S.W.3d 42, 44 (Tex. App.CAustin 1999, pet. denied) (AThe determination of jurisdiction over a declaratory judgment action is a question of law and so is subject to *de novo* review).

**4**

The purpose of a declaratory judgment is Ato settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered.@ Tex. Civ. Prac. & Rem. Code Ann. ' 37.002(b) (West 1997). However, the Uniform Declaratory Judgments Act does not *confer* jurisdiction on a trial court, but rather makes declaratory judgment available as a remedy for a cause of action *already within the court=s jurisdiction*. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (holding that mere request for declaratory judgment does not establish jurisdiction); *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994) (AA litigant=s request for declaratory relief cannot confer jurisdiction on the court, nor can it change the basic character of a suit.@); *Texas Ass=n of Bus.*, 852 S.W.2d at 444 (A[W]e have interpreted the Uniform Declaratory Judgments Act . . . to be merely a procedural device for deciding cases already within a court=s jurisdiction rather than a legislative enlargement of a court=s power, permitting the rendition of advisory opinions.@); *accord Frasier v. Yanes*, 9 S.W.3d 422, 427 (Tex. App.CAustin 1999, no pet.) (holding that claimant seeking declaratory judgment must already have separate, valid cause of action). A[T]he marital status of parties is a proper subject for declaratory relief, but only where an actual, justiciable controversy exists.@ *Georgiades v. Di Ferrante*, 871 S.W.2d 878, 881 (Tex. App.CHouston [14th Dist.] 1994, writ denied). This Court must determine whether Charles=s request for declaratory relief is germane to a justiciable controversy already within the district court=s jurisdiction.

**Justiciable Controversy in Texas**

5

A justiciable controversy need not be A fully ripened cause of action.@ *Texas Dep=t of Public Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.C Austin 1998, no pet.) (citing *Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754, 760 (Tex. Civ. App.C Beaumont 1954, no writ)).  However, the fact situation must manifest the A>ripening seeds of a controversy=. . . even though the differences between the parties as to their legal rights have not reached the state of an actual controversy.@ *Ainsworth*, 271 S.W.2d at 761 (cited in *Moore*, 985 S.W.2d at 154).  In other words, there must either be a pending cause of action between the parties or such a clear indication of the extent of the parties= differences that a court may presume one is imminent.

Here, there is neither a pending action in Texas nor seeds that could ripen into a Texas controversy, because, under the facts presented by the Reynoldses, any controversy between them exists in Virginia.  Charles seeks to establish that he and Gretchen did not have an informal marriage under the laws of Texas, a matter that he may assert in Virginia, but may not assert in Texas, because a Texas court could not divorce the Reynoldses and their dispute arose in Virginia.

We begin by observing that neither party has requested a divorce from a Texas court. In fact, at the time Charles filed this action, there was no suit for divorce pending between the parties in any jurisdiction.[3]  Texas law contains a residency requirement that a party must satisfy before a court may grant a divorce:

> A suit for divorce may not be maintained in this state unless at the time suit is filed either the petitioner or the respondent has been:

---

[3]  As previously noted, this cause was filed March 23, 2000; Gretchen=s Virginia divorce action was filed April 5, 2000.

**6**

> (1) a domiciliary of this state for the preceding six-month period; and

> (2) a resident of the county in which the suit is filed for the preceding 90-day period.

Tex. Fam. Code Ann. ' 6.301 (West 1998). Section 6.301, although not itself jurisdictional, is akin to a jurisdictional provision in that it controls a party=s right to maintain a suit for divorce and is a mandatory requirement that the parties cannot waive. *Oak v. Oak*, 814 S.W.2d 834, 837 (Tex. App.CHouston [14th Dist.] 1991, writ denied) (AThe residency requirements of section [6.301] are not jurisdictional, but, rather, prescribe the qualifications that must be met before a court may grant a divorce. Section [6.301] does not deal with jurisdiction . . . it controls the right to maintain a suit.@) (citations omitted)[4]; *Berry v. Berry*, 612 S.W.2d 213, 216 (Tex. Civ. App.CBeaumont 1980, writ dism=d) (stating that parties cannot waive residency requirement); *In re Marriage of Earin*, 519 S.W.2d 892, 893 (Tex. Civ. App.CHouston [1st Dist.] 1975, no writ) (holding that residency requirement is mandatory). The public policy behind the domiciliary requirement is to prevent forum shopping by divorce litigants. *Kopecinski v. Kopecinski*, 627 S.W.2d 472, 473 (Tex. App.CCorpus Christi 1981, writ dism=d w.o.j.) (citing *Beavers v. Beavers*, 545 S.W.2d 29, 30 (Tex. Civ. App.CWaco 1976, no writ)); *Berry*, 612 S.W.2d at 473 (A[I]t is readily apparent that Texas has not sought to cultivate the business of those . . . who may play fast and loose with findings of domicile.@).

---

[4] *Oak v. Oak*, 814 S.W.2d 834, 837 (Tex. App.CHouston [14th Dist.] 1991, writ denied) specifically addresses former section 3.21. Current section 6.301 was adopted effective April 17, 1997. The provisions are the same. *Compare* Act of May 28, 1973, 63d Leg., R.S., ch. 577, ' 13, 1973 Tex. Gen. Laws 1596, 1603, *with* Tex. Fam. Code. Ann. ' 6.301 (West 1998). The current code is cited for convenience.

The failure of a divorce petition to properly allege residency renders the suit subject to abatement. *Oak*, 814 S.W.2d at 837 (citing *Svensen v. Svensen*, 629 S.W.2d 97, 98 (Tex. App.CDallas 1981, no writ) (A[A] petition that fails to allege the completion of the residency requirement may be attacked by plea in abatement as premature.@)); *Kopecinski*, 627 S.W.2d at 473 (citing *Harrison v. Harrison*, 543 S.W.2d 176, 177 (Tex. Civ. App.CHouston [14th Dist.] 1976, no writ)).

The record reveals that both parties are domiciled in the state of Virginia and were when they filed their respective actions. Neither Charles nor Gretchen satisfies Texas=s domiciliary requirement to pursue a divorce in this state. Charles=s AOriginal Petition for Declaratory Relief@asserts that he Ais a[n] individual resident citizen of Harris[on]burg, Virginia,@ and Gretchen Ais an individual resident citizen of Timberville, Virginia.@ The record contains no indication that either intends to move from Virginia to Texas. This Court is thus presented with a novel situation wherein neither party is seeking a divorce in a Texas court, and, if either were, the suit could not be maintained because neither Charles nor Gretchen could satisfy the Texas domiciliary requirement. A Texas court, under the facts presented here, could not grant either party a divorce but would have to abate the case until one party or the other established domicile.[5] The record reflects no contact with the state of Texas by either party since 1979. A Texas

---

[5] In a dissenting opinion in *Svensen*, Chief Justice Guittard observed that, under appropriate circumstances, dismissal of an action for failure to satisfy the family-code residency requirement might be appropriate. *See Svensen v. Svensen*, 629 S.W.2d 97, 98-99 (Tex. App.CDallas 1981, no writ) (Guittard, C.J., dissenting) (AOrdinarily, if a plea in abatement can be promptly cured by an amendment . . . the suit should not be dismissed without allowing the plaintiff a reasonable time to cure the defect. On the other hand, if the defect cannot be so readily cured, dismissal may be proper.@) (citations omitted). One such circumstance might be when neither party manifests an intent to satisfy family-code section 6.301.

district court is thus an inappropriate forum for Charles=s declaratory-judgment action concerning an issue central to his relationship with Gretchen.

We hold the lack of a justiciable controversy in Texas is fatal to Charles=s suit for declaratory relief.[6] A trial court may only receive Uniform Declaratory Judgments Act jurisdiction by virtue of a justiciable controversy. *Moore*, 985 S.W.2d at 154. Without a pending suit for divorce or at least the threat of such suit in Texas, there is no justiciable controversy for Texas courts to resolve, and Charles=s action is no more than a request for an advisory opinion. Texas courts lack jurisdiction to render advisory opinions. *Texas Ass=n of Bus.*, 852 S.W.2d at 444.

## CONCLUSION

For the above-stated reasons, we hold that the district court lacked jurisdiction to entertain Charles=s suit for declaratory judgment, reverse the district-court judgment, and dismiss this cause.

Lee Yeakel, Justice

Before Justices Kidd, Yeakel, and Patterson

Reversed and Dismissed

---

[6] In so holding, we observe that there is no impediment to the Virginia court=s considering Texas law in determining whether Gretchen may establish an informal marriage.

Filed:   July 26, 2002

Publish