**Opinion issued December 19, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00240-CV

———————————

## IN RE NICOLETTE MILTON, Relator

———————————

### Original Proceeding on Petition for Writ of Mandamus

———————————

## O P I N I O N

Nicolette Milton seeks mandamus relief to compel the trial court to vacate its orders denying her special appearance and motion to dismiss the underlying divorce proceeding and suit affecting the parent–child relationship.[1] She contends that (1) Texas lacks subject–matter jurisdiction over J.A.M., the minor child involved in this dispute; (2) in any event, Harris County is not the county of proper

---

[1] The Honorable Sheri Y. Dean, Judge of the 309th District Court of Harris County is the respondent. The underlying case is *In re Marriage of Milton*, No. 2012-50381 in the 309th District Court, Harris County, Texas.

venue; and (3) the trial court erroneously issued temporary orders before ruling on her special appearance.

We conclude that Texas has subject–matter jurisdiction over the suit affecting the parent–child relationship (SAPCR), but agree that venue is improper in Harris County. We therefore conditionally grant mandamus relief and direct the trial court to transfer the case back to the Fort Bend County district court. We vacate the trial court's order of contempt and order for capias for Nicolette's arrest based on the trial court's temporary orders. Because we have directed the trial court to transfer the underlying proceeding back to Fort Bend County, we abate the proceedings in this court pending the Fort Bend County court's review of the temporary orders. *See In re Blevins*, No. 12-0636, 2013 WL 5878910, at *2 (Tex. Nov. 1, 2013).

## Background

On February 10, 2012, real party in interest Jonathan Milton filed suit in Fort Bend County, Texas seeking a divorce and custody of his minor son, J.A.M. J.A.M. was eight months old at the time, had been born in Texas, and had lived his entire life in Texas. In his divorce petition, Jonathan, acting pro se, checked two boxes indicating that both he and Nicolette had lived in Fort Bend County for the past ninety days. That day, Nicolette fled with J.A.M. to Utah.

2

On May 21, 2012, Nicolette filed a special appearance. Nicolette argued that the trial court lacked personal jurisdiction over her because she was domiciled in Utah, not Texas. She requested that the trial court either dismiss the case because it lacked subject–matter jurisdiction pursuant to section 152.201 of the Family Code or decline jurisdiction because Texas was an inconvenient forum and Utah was a more appropriate forum. *See* TEX. FAM. CODE ANN. § 152.201 (West 2008) (defining Texas court jurisdiction to make initial child custody determinations); *id.* § 152.207 (providing that Texas court that has jurisdiction may decline to exercise jurisdiction if it determines that Texas is inconvenient forum and court of another state is more appropriate forum).

About three months later, on August 16, the Fort Bend County court sua sponte transferred the proceeding to Harris County, even though no party resided in Harris County or intended to reside there. Meanwhile, Nicolette filed a second suit for divorce in Utah, in which she also sought custody of J.A.M.

Jonathan amended his petition for divorce in the Harris County trial court the following January. He did not challenge venue. Jonathan requested that the trial court "make temporary orders and issue any appropriate temporary injunctions for the preservation of the property and protection of the parties and for the safety and welfare of [J.A.M.] as deemed necessary and equitable." Jonathan had resided

in Fort Bend County, not Harris County—and had done so for over a year—when he filed this amended petition.

Nicolette amended her special appearance and moved to dismiss the Harris County action on January 24, 2013. Nicolette argued that Texas lacks "home state" jurisdiction to make an initial child custody determination, because she and J.A.M. had moved to Utah in February 2012 and J.A.M. had not resided in Harris County for the six–month period preceding the date Jonathan filed his amended petition. In addition, she argued that Jonathan did not meet the Family Code's requirement that either he or his spouse live in the county for the preceding ninety–day period in which he filed a suit for divorce. *See id.* § 6.301 (West 2006).

The trial court heard Nicolette's special appearance and motion to dismiss on January 24, 2013. Both Jonathan and Nicolette testified at the hearing. Jonathan testified that he, Nicolette, and J.A.M. moved to Fort Bend County from Harris County on December 31, 2011. He agreed that he had not resided in Fort Bend County for ninety days before filing his initial suit, but has resided there continuously since December 31, 2011. Nicolette testified that she left Texas for Utah, with J.A.M., on the day Jonathan filed for divorce. One day after the hearing, the Harris County trial court entered temporary orders in the case, including a provision requiring Nicolette to present J.A.M. to Jonathan at the Salt Lake City International Airport at 6:00 p.m. on January 25, 2013, for Jonathan to

have two weeks' visitation with J.A.M. The order warned the parties that failure to comply with a court order could result in a contempt of court finding.

Nicolette failed to present J.A.M. to Jonathan for visitation as required by the trial court's temporary orders. Jonathan then moved to enforce the possession order. Jonathan also requested an order holding Nicolette in contempt, and, because Nicolette had failed to present J.A.M. to Jonathan on two other occasions, he also asked for an order requiring Nicolette to provide a bond or other security to ensure her compliance with the court's possession order.

On February 6, 2013, the trial court faxed the parties a letter stating that the court had conferred with the Utah trial court, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). The trial court enclosed a ruling from the Utah trial court, in which the Utah court determined that, because "there is a pending Texas action with proper jurisdiction, it would not be appropriate to go forward with respect to any custody or parent time determinations in this court." *See* TEX. FAM. CODE ANN. § 152.201(a)(2), (3) (West 2008). The Texas trial court denied Nicolette's special appearance and motion to dismiss, concluding that it had home state jurisdiction to render an initial child custody determination.

The next day, at a status hearing which Nicolette did not attend, the trial court named Jonathan the temporary sole managing conservator of J.A.M. The

5

court also found that there was a threat that Nicolette would remove J.A.M. from Texas and "hide and secrete the child from the Court and the father." As a result, the court ordered that all of Nicolette's visitations with J.A.M. had to be exercised through the SAFE Supervised Visitation Program. The court ordered Nicolette to pay interim child support to Jonathan for J.A.M.'s benefit.

On February 28, 2013, at a motion–to–enforce hearing which Nicolette did not attend, the trial court issued a writ of attachment, commanding any sheriff or constable to deliver J.A.M. to Jonathan and ordering Jonathan to then present J.A.M. before the court for a hearing "to determine the right to possession of the child." The trial court simultaneously issued an order for capias for Nicolette's arrest due to her failure to provide J.A.M. to Jonathan for his court–ordered possession.

In this mandamus proceeding, Nicolette seeks relief from the Harris County trial court's orders on the basis that the trial court lacks subject–matter jurisdiction and that venue in Harris County is improper.

### Standard of Review

To be entitled to mandamus relief, Nicolette must establish that the trial court clearly abused its discretion and that she lacks an adequate remedy by appeal. *See In re Spooner*, 333 S.W.3d 759, 763 (Tex. App.—Houston [1st Dist.] 2010,

6

orig. proceeding); *In re Green*, 385 S.W.3d 665, 668 (Tex. App.—San Antonio 2012, orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding), and *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding)). A trial court abuses its discretion concerning factual matters if the record establishes that the trial court could reasonably have reached only one decision. *Green*, 385 S.W.3d at 668–69 (citing *Walker*, 827 S.W.2d at 840). A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *Id.* at 669 (quoting *Walker*, 827 S.W.2d at 840).

## Subject–Matter Jurisdiction

Nicolette contends that Texas lacks subject–matter jurisdiction over J.A.M. because J.A.M. resided in Utah, not Texas, for the six–month period preceding January 9, 2013, the date Jonathan filed his amended petition in Harris County; thus, she contends, Texas is not J.A.M.'s "home state." The UCCJEA governs jurisdiction over child custody issues between Texas and other states. *In re Isquierdo*, No. 01-11-00193-CV, 2012 WL 2455074, at *2 (Tex. App.—Houston [1st Dist.] Jun. 28, 2012, orig. proceeding). Section 152.201(a) incorporates the UCCJEA into the Texas Family Code and provides the "exclusive jurisdictional basis for making a child custody determination by a court of this state." *Waltenburg v. Waltenburg*, 270 S.W.3d 308, 313 (Tex. App.—Dallas 2008, no

7

pet.) (discussing Family Code section 152.201(b)).  Section 152.201 describes the circumstances in which a Texas court may make an "initial child custody determination."  TEX. FAM. CODE ANN. § 152.201(a) (West 2008); *see also id.* § 152.102(8) (defining "initial determination" as "the first child custody determination concerning a particular child").  A Texas court has jurisdiction to make an initial child custody determination if Texas is the child's "home state . . . on the date of the *commencement of the proceeding*."  *Id.* § 152.201(a)(1) (emphasis added).  The Family Code defines "home state" as "the state in which a child lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding."  *Id.* § 152.102(7).  The Family Code further defines "child custody proceeding" as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue," and the term "includes a proceeding for divorce."  *Id.* § 152.102(4).  "Commencement" is defined as "the filing of the first pleading in a proceeding."  *Id.* § 152.102(5).  The date of the commencement of the child custody proceeding is the reference point from which to determine the child's home state.  *In re Brown*, 203 S.W.3d 888, 891 (Tex. App.—Fort Worth 2006, orig. proceeding); *In re Oates*, 104 S.W.3d 571, 577 (Tex. App.—El Paso 2003, orig. proceeding).

Jonathan "commenced" this child custody proceeding on February 10, 2012, the date he filed the divorce petition and a suit affecting the parent–child

8

relationship in Fort Bend County. Accordingly, February 10 is the reference point for determining J.A.M.'s "home state," not the date Jonathan filed an amended petition in Harris County, as Nicolette suggests. The Fort Bend County court sua sponte transferred the underlying proceeding to the Harris County court, but it never dismissed the proceeding. Nicolette's assertion—that filing an amended petition resets the circumstances and the time period for determining the child's home state—is unsupported by the language of the UCCJEA, which requires that the "home state" be determined as "the filing of the *first pleading* in a proceeding." TEX. FAM. CODE ANN. § 152.102(5) (West 2008) (emphasis added).

Nicolette cites *Whiteman v. Whiteman*, 682 S.W.2d 357 (Tex. App.—Dallas 1984, no writ), for the proposition that amending a petition should constitute a new suit for the purpose of determining a child's "home state" under the UCCJEA. *Id.* at 358. In *Whiteman*, the court of appeals held that amending a petition in a divorce proceeding reset the date of suit for purposes of satisfying the sixty–day waiting period requirement for the finality of a divorce. *Id.*; *see also* TEX. FAM. CODE ANN. § 6.702(a) (West 2006). But the UCCJEA expressly requires that the date for purposes of establishing subject–matter jurisdiction is the date of the first pleading, not the last. Jonathan's February 10, 2012 petition satisfied all subject–matter jurisdiction requirements because J.A.M. lived in Texas for "at least six consecutive months immediately before the commencement of a child custody

9

proceeding." *See* TEX. FAM. CODE ANN. § 152.102(7) (West 2008). We hold that Texas is J.A.M.'s home state, and Texas courts have subject–matter jurisdiction to make an initial child custody determination. *See id.* § 152.102(7), 152.201(a)(1).

**Venue**

Nicolette alternatively contends that Harris County is not the county of proper venue, because Jonathan cannot meet the Family Code's residency requirement for filing a divorce petition. We agree.

### A.     Residency Requirements for Divorce Proceedings

The right to seek a divorce is a statutory right, and, as such, the state has the right to determine who may use its courts for that purpose and the conditions under which they may do so. *Green*, 385 S.W.3d at 669. Section 6.301 of the Family Code defines these parameters. It provides,

> A suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been:
>
> (1)     a domiciliary of this state for the preceding six–month period; and
>
> (2)     a resident of the county in which the suit is filed for the preceding 90–day period.

TEX. FAM. CODE ANN. § 6.301 (West 2006). This section is not jurisdictional, but it controls a petitioner's right to sue for a divorce; it is a mandatory requirement

10

that cannot be waived.  *See Green*, 385 S.W.3d at 669; *Reynolds v. Reynolds*, 86 S.W.3d 272, 276 (Tex. App.—Austin 2002, no pet.); *McCaskill v. McCaskill*, 761 S.W.2d 470, 473 (Tex. App.—Corpus Christi 1988, writ denied) ("Though not jurisdictional, the residency requirement protects the interests of the [s]tate as well as the parties, and cannot be waived by the parties."); *In re Marriage of Lai*, 333 S.W.3d 645, 648 (Tex. App.—Dallas 2009, orig. proceeding) (holding that trial court cannot maintain suit for divorce unless residency requirements are met). Residency must be established as of the date the suit for divorce is filed; it is not enough that ninety days of residency will pass during the pendency of the divorce proceeding.  *In re Rowe*, 182 S.W.3d 424, 426 (Tex. App.—Eastland 2005, orig. proceeding).  The public policy behind these requirements is to prevent forum shopping by divorce litigants.  *Reynolds*, 86 S.W.3d at 277.

Typically, when the residency requirements have not been met, the trial court abates the suit so that either the petitioner or the respondent can meet the residency requirements.  *See Green*, 385 S.W.3d at 670; *Reynolds*, 86 S.W.3d at 277 ("The failure of a divorce petition to properly allege residency renders the suit subject to abatement.").  Once a party files a plea in abatement, the trial court should abate the proceedings until at least one of the parties has completed the mandatory residency requirements.  *Oak v. Oak*, 814 S.W.2d 834, 838 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *Svensen v. Svensen*, 629 S.W.2d

11

97, 98 (Tex. App.—Dallas 1981, no writ) ("[T]he proper remedy in sustaining a plea in abatement is not to dismiss but to retain the case on the docket, so that when the impediment to prosecution of the suit is removed it may be revived."); *see also Hoffman v. Hoffman*, 821 S.W.2d 3, 5–6 (Tex. App.—Fort Worth 1992, no writ) (holding that trial court should abate until petitioner meets residency requirements, at which point petitioner may file amended petition showing compliance with requirements). When, however, the record indicates that neither party intends to reside in the county of suit, abating the suit will not cure a failure to meet the residency requirements. *See Green*, 385 S.W.3d at 670 ("Because neither party will ever meet the residency requirements, the impediment to the trial court going forward with the suit cannot be removed[,]" and dismissal is the proper remedy).

The facts concerning the Miltons' residencies are undisputed. Nicolette and Jonathan were married in Harris County and lived in Harris County with J.A.M. from the child's birth until December 31, 2011, at which time they moved to Fort Bend County. Jonathan filed his divorce petition in Fort Bend County on February 10, 2012, over one month, but less than ninety days after the parties had established a residence in Fort Bend County. Because neither Jonathan nor Nicolette had resided in Fort Bend County for the preceding ninety–day period at the time Jonathan filed his divorce petition, Jonathan did not satisfy the mandatory

12

residency requirements of section 6.301 at the time he sued for divorce.  *See* TEX.

FAM. CODE ANN. § 6.301 (West 2006); *Green*, 385 S.W.3d at 669.

Although Nicolette filed a special appearance after the expiration of the

ninety–day period, she did not file a plea in abatement.  The Fort Bend County trial

court, at neither parties' request, nevertheless transferred the case sua sponte to

Harris County in August 2012, a county in which, by that point, neither Jonathan

nor Nicolette had resided for over eight months.   Nicolette thus correctly

challenges the venue of the Harris County court.  The proper remedy generally is

to abate the proceedings until the petitioner satisfies the residency requirements,

but neither Jonathan nor Nicolette intend to move back to Harris County.  *See*

*Green*, 385 S.W.3d at 670.  Because neither party has resided, nor will reside, in

Harris County for at least ninety days, the lack of residency of the parties remains

an impediment to the Harris County trial court proceeding with the case.  *See id.*

### B.     *Availability of Mandamus Relief*

Jonathan responds that mandamus relief is not available to correct an

erroneous venue ruling.  The Texas Supreme Court has held that "reversible error

alone is insufficient to warrant mandamus relief" and that, generally, venue

decisions "are incidental trial rulings correctable by appeal."  *See Rowe*, 182

S.W.3d at 426 (citing *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 308

n.11 (Tex. 1994), and *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 215 (Tex. 1999)).

The Texas Supreme Court has made an exception, however, for cases involving suits affecting the parent–child relationship, reasoning that "the need to expeditiously resolve custody and support issues makes ordinary appeal inadequate." *Mo. Pac. R.R. Co.*, 998 S.W.2d at 215; *In re Calderon*, 96 S.W.3d 711, 715 (Tex. App.—Tyler 2003, orig. proceeding) ("Remedy by regular appeal, though available, is frequently inadequate to protect the rights of parents and children to trial in a particular venue.").

In *In re Green*, the San Antonio Court of Appeals considered whether the petitioner's failure to satisfy the residency requirement was appropriate for mandamus relief. *See* 385 S.W.3d at 671. That court noted that mandamus relief may be necessary to: (1) preserve a relator's substantive or procedural rights from impairment or loss; (2) allow appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in an appeal from a final judgment; and (3) prevent the waste of public and private resources invested into proceedings that would eventually be reversed. *Id.* (citing *Prudential*, 148 S.W.3d at 136). We employ a balancing test to determine whether the benefits of mandamus relief outweigh the detriments in a particular case and, therefore, whether the appellate remedy is adequate. *Id.* (citing *In re Prudential*, 148 S.W.3d at 135–37). The San Antonio Court of Appeals determined that mandamus relief was appropriate in *Green*, because the parties' divorce proceeding could not be maintained in Texas,

14

any final judgment would be reversed on appeal, both parties lived in Germany, neither party had any intent to move back to Texas, and a single bank account was the only connection to Texas. *Id.*

For similar reasons, we hold that mandamus relief is appropriate in this case. The Miltons have no current connection to Harris County. They moved to Fort Bend County on December 31, 2011, where Jonathan still resides. Neither party has expressed an intent to reside in Harris County. The sensitive child custody and visitation issues involved in this case render ordinary appellate review of the venue issue inadequate. *Cf. Rowe*, 182 S.W.3d at 426–27 & 426 n.1 (holding that appeal was adequate to review decision concerning residency requirement, but noting that neither party had characterized suit as suit affecting parent–child relationship).

Jonathan argues that Nicolette waived her objections to venue because she did not move to transfer venue pursuant to Texas Rule of Civil Procedure 86. But Nicolette challenged the Harris County court's venue in her special appearance pleading and special appearance at the hearing before the trial court; Jonathan did not object that he lacked sufficient notice under Rule 86. *See* TEX. R. CIV. P. 86 (providing that motion to transfer venue "may be combined with other objections and defenses and included in the movant's first responsive pleading").

We hold that Nicolette is entitled to mandamus relief. Because the mandatory residency requirement cannot be met in Harris County, the current

15

county of suit, the Harris County court should transfer the underlying proceeding back to Fort Bend County, where venue is now proper.

## Temporary Orders

Finally, Nicolette contends that the trial court's January 25, 2013 temporary orders—which ultimately led to a writ of attachment and an order for capias for Nicolette's arrest—are void, because the trial court entered these orders before ruling on Nicolette's special appearance and venue challenge. Mandamus is an appropriate remedy to attack temporary orders in a suit affecting the parent–child relationship, because such orders are not subject to review on interlocutory appeal. *See Dancy v. Daggett*, 815 S.W.2d 548, 549 (Tex. 1991); TEX. FAM. CODE ANN. § 105.001(e) (West 2008).

Upon a transfer of venue, the transferred case stands as though originally filed in the transferee court; thus, any order entered in the first trial court has the same effect as an order originally rendered in the transferee court. *See Standard Sav. & Loan Ass'n v. Miller*, 114 S.W.2d 1201, 1209 (Tex. Civ. App.—Fort Worth 1938, no writ). But mandamus relief is not available against a new presiding judge for the rulings of the former judge, absent the new judge's refusal to grant the requested relief if the new judge is authorized to do so. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 228 (Tex. 2008). A newly presiding judge may reconsider and modify interlocutory orders at any time prior to losing plenary

16

jurisdiction. *See id.* at 231–32. Because we have directed the trial court to transfer the underlying proceeding back to Fort Bend County, a new judge will preside. We abate the proceedings in this court with respect to Nicolette's challenges to the temporary orders. *See Blevins*, 2013 WL 5878910, at \*1 (abating proceedings to allow trial judge now presiding to consider the matters underlying the challenged order). To afford Nicolette the opportunity to challenge those orders in Fort Bend County, we vacate the trial court's order of contempt and order for capias for arrest.[2] The parties shall file a status report with our court on or before January 31, 2014.

## Conclusion

We conclude that Texas has subject–matter jurisdiction over the suit affecting the parent–child relationship (SAPCR), but that venue is improper in Harris County. We therefore conditionally grant mandamus relief and direct the trial court to transfer the case to Fort Bend County. We vacate the trial court's order of contempt and order for capias for arrest. We abate the proceedings in this court and direct the Fort Bend County trial judge who will preside over the case to consider the matters underlying the challenged temporary orders and determine whether the challenged orders should remain in effect, be modified, or be set aside,

---

[2] We note that Nicolette does not challenge custody, child support, personal jurisdiction, or proper notice of trial court hearings in her petition, other than to the extent that she challenges subject–matter jurisdiction.

17

and to render its own orders accordingly.  *See id.*  The trial judge is not limited to considering only evidence on which the orders were based.

Jane Bland
Justice

Panel consists of Justices Keyes, Higley, and Bland.

Justice Keyes, dissenting.