**Affirmed and Opinion filed July 6, 2021.**



In The

# Fourteenth Court of Appeals

### NO. 14-20-00112-CV

## RICKY LYNN WILLIAMS, Appellant

### V.

## LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE; AND DEBRA GIBBS, ASSISTANT DIRECTOR, CLASSIFICATION AND RECORDS, Appellees

**On Appeal from the 419th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-19-003670**

## O P I N I O N

Appellant Ricky Lynn Williams, an inmate in custody of the Texas Department of Criminal Justice ("TDCJ"), appeals a judgment dismissing his lawsuit against the agency's former director and former assistant director. Williams's claims arise from a detainer lodged against him in Texas by a Louisiana sheriff. Williams alleges his constitutional rights have been violated because appellees have failed to provide him "information" underlying the detainer as well

as counsel to challenge it. He filed an internal grievance, but it was returned to him with the notation that his complaint was "not grievable." He then filed the present lawsuit.

Invoking Texas Civil Practice and Remedies Code Chapter 14, appellees moved to dismiss Williams's suit because he allegedly failed to comply with that chapter's exhaustion of remedies and filing requirements[1] and because he lacks standing. The trial court granted appellees' motion and dismissed the suit for "failure to comply with" Chapter 14.

On appeal, Williams argues that Chapter 14's exhaustion and filing requirements do not apply to this case because his complaint is not grievable under TDCJ's inmate grievance policy, as prison officials determined. We need not reach his argument, however, because we conclude that we may uphold the trial court's dismissal on alternative jurisdictional grounds, as we explain below.

We affirm the trial court's judgment.

## Background

Williams is an inmate currently serving a twenty-year sentence at TDCJ's Terrell Unit in Rosharon, Texas. He alleged that the Sheriff's Office in Saint Martinville, Louisiana, filed a detainer against him with the TDCJ.[2] A "detainer" is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency or that the agency be advised when the prisoner's release is imminent. *Fex v. Michigan*, 507 U.S. 43, 45 (1993); *Carchman v. Nash*, 473 U.S. 716, 719 (1985). A copy of the detainer is not included in our record, but according to Williams the detainer is

---

[1] *See* Tex. Civ. Prac. & Rem. Code § 14.005(a); Tex. Gov't Code § 501.008.

[2] According to Williams, copies of the detainer were sent to the Terrell Unit warden, the Parole Board, and "to the file held on Plaintiff by Classification and Records."

2

based only on an arrest warrant, not any existing indictment, information, or outstanding conviction.[3]

Williams contends that he is entitled to appointment of counsel to assist him in defending against the detainer. Williams wrote a letter to appellees—Lorie Davis, Director of TDCJ, and Debra Gibbs, Assistant Director of Classification and Records of TDCJ—seeking "information" on the charges against him so Williams could obtain counsel, but he received no response. Williams also submitted an offender grievance form, in which he requested the detainer be removed from TDCJ records if the Louisiana sheriff who lodged the detainer did not remove him from TDCJ custody within sixty days. Prison officials determined that "the issue presented was not grievable" and returned the form to Williams.

---

[3] Generally, detainers are based on outstanding criminal charges, outstanding parole- or probation-violation charges, or additional sentences already imposed against the prisoner. *Carchman*, 473 U.S. at 719. But detainers need not be based on existing charges; an agency may lodge a detainer against an incarcerated person even before an indictment or information has been filed. *See* Detainers and the Correctional Process, 1966 Wash. U.L.Q. 417, 417 (1966) (hereinafter "Detainers"). In most instances, the filing of detainers is governed by the Interstate Agreement on Detainers Act ("IADA"), which is a congressionally sanctioned compact between the states that have adopted it and the United States. *See New York v. Hill*, 528 U.S. 110, 111 (2000); *State v. Chesnut*, 424 S.W.3d 213, 214 (Tex. App.—Texarkana 2014, no pet.). Texas has adopted the agreement. *See* Tex. Code Crim. Proc. art. 51.14. The IADA is not invoked here, however, because it applies only to detainers based on "untried indictments, informations, and complaints," and Williams has specifically alleged that the detainer is based only on an arrest warrant. *See State v. Votta*, 299 S.W.3d 130, 135 (Tex. Crim. App. 2009); Tex. Code Crim. Proc. art. 51.14(I); *see also United States v. Bottoms*, 755 F.2d 1349, 1350 (9th Cir. 1985) (IADA did not apply to detainer based on arrest warrant when no indictment, information, or complaint filed). Separately, the IADA does not apply unless both the filing jurisdiction and the jurisdiction housing the inmate are parties. *See Robinson v. United States*, 580 F.2d 783, 784 (5th Cir. 1978) (stating the IADA's procedures do not apply to non-party states). Although Texas has adopted the agreement, Louisiana has not. *See Russell v. United States*, No. 3:19-cv-2539-G-BN, 2019 WL 7484081, at *1 (N.D. Tex. Dec. 10, 2019) (noting Mississippi and Louisiana are not parties to the IADA). Traditionally, detainers not subject to the IADA do not bind incarcerating authorities but are usually honored as a matter of comity among sovereigns. *See* Detainers, 1966 Wash. U.L.Q. at 418.

Williams then filed an "Original Complaint and Petition for Writ of Mandamus," asserting claims under 42 U.S.C. section 1983 and the Texas Constitution's Bill of Rights. He sued appellees in their individual and official capacities. Williams also filed an inability-to-pay affidavit. In his petition, Williams alleged appellees have a practice of accepting detainers while providing prisoners neither counsel nor the "necessary information" to challenge them. He alleged that appellees' failure to provide him with the detainer's "underlying basis" or with counsel deprives him of his federal and state constitutional rights. He also claimed to have suffered mental and physical pain and to have been deprived of parole review provided to those inmates who do not have detainers lodged against them. As relief, Williams sought: (1) a writ of mandamus directing appellees to provide him the detainer lodged against him; (2) a writ of mandamus directing appellees to provide him with counsel to defend against the detainer; (3) declaratory and injunctive relief; and (4) actual and exemplary damages.

Appellees filed a motion to dismiss Williams's suit under Civil Practice and Remedies Code Chapter 14, applicable to inmate litigation. They asserted several grounds for dismissal. Appellees argued that Williams failed to exhaust available administrative remedies and failed to satisfy certain filing prerequisites because he did not file a copy of his grievance or the statutorily required affidavit. *See* Tex. Civ. Prac. & Rem. Code § 14.005(a); *see also Garrett v. Borden*, 283 S.W.3d 852, 853 (Tex. 2009); *Wallace v. Tex. Dep't of Criminal Justice-Institutional Div.*, 36 S.W.3d 607, 610 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Additionally, appellees contended that the case should be dismissed under section 14.003 because it has no basis in law or in fact. Tex. Civ. Prac. & Rem. Code § 14.003(a), (b). In this section of the motion, appellees argued that the trial court

4

lacked jurisdiction over Williams's petition for writ of mandamus and that Williams failed to allege an injury-in-fact and otherwise lacked standing.

In a response, Williams asserted that his claims are not subject to section 14.005's filing and exhaustion requirements because those requirements apply only to claims that are subject to the inmate grievance system, and prison officials determined his claims were "not grievable." In a reply, appellees did not dispute that prison officials found Williams's complaint not grievable but argued that they did so in error. In any event, appellees urged the trial court to dismiss the lawsuit pursuant to section 14.003.

The trial court signed an order dismissing Williams's suit "for failure to comply with Chapter 14 of the Texas Civil Practice and Remedies Code." Williams appeals.

## Analysis

The parties commit much discussion to whether section 14.005's filing prerequisites apply and have been satisfied, but we need not address those questions because we conclude the trial court's order may be affirmed on alternative grounds. *See* Tex. R. App. P. 47.1.

Appellees contest the trial court's subject-matter jurisdiction over the lawsuit, including Williams's standing. We address challenges to the trial court's jurisdiction first. *See Norris v. Triumph Hosp. of E. Houston, L.P.*, No. 14-13-00431-CV, 2014 WL 2631069 (Tex. App.—Houston [14th Dist.] June 12, 2014, pet. denied) (mem. op.); *Gardner v. Stewart*, 223 S.W.3d 436, 438 (Tex. App.—Amarillo 2006, pet. denied) ("Before we consider the Gardners' sole issue, we first address the question of whether the Gardners' pleadings and action were effective to invoke the jurisdiction of the trial court.").

5

**A.** **The trial court lacked subject-matter jurisdiction over Williams's requests for mandamus and injunctive relief.**

In their motion to dismiss, appellees argued that the trial court lacked jurisdiction over Williams's request for mandamus relief. According to appellees, a district court may issue a writ of mandamus to enforce its own jurisdiction, but it has no constitutional or statutory jurisdiction to exercise supervisory control via mandamus over state prison officials. Tex. Const. art. V, § 8; Tex. Gov't Code § 24.011; *Martinez v. Thaler*, 931 S.W.2d 45, 46 (Tex. App.—Houston [14th Dist.] 1996, writ denied). Though appellees asserted this argument in the trial court, they have not advanced it in their brief on appeal. But, as we are duty-bound to determine, *sua sponte*, whether jurisdiction exists,[4] and because we must address jurisdictional questions regardless whether appellees filed a brief at all,[5] we consider the question.

This court and others (including the Third Court of Appeals from which this case was transferred to our court)[6] have held that a district court has mandamus jurisdiction only to enforce its own jurisdiction. *See Barker v. Livingston*, No. 14-12-00254-CV, 2012 WL 3866505, at *2 (Tex. App.—Houston [14th Dist.] Sept. 6, 2012, no pet.) (mem. op); *Martinez*, 931 S.W.2d at 46; *Walker v. Jenkins*, No. 03-18-00235-CV, 2018 WL 3059962, at *2 (Tex. App.—Austin June 21, 2018, no

---

[4] *See, e.g.*, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993); *Nelson v. U.S. Postal Serv.*, No. 07-03-0050-CV, 2003 WL 22069558, at *1 (Tex. App.—Amarillo Sept. 5, 2003, no pet.) (mem. op.). Subject-matter jurisdiction is never presumed and challenges to it cannot be waived. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443-44.

[5] *See, e.g.*, *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam) ("Not only may a reviewing court assess jurisdiction for the first time on appeal, but all courts bear the affirmative obligation to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it.") (internal quotation omitted).

[6] The Supreme Court of Texas transferred this case to our court from the Third Court of Appeals. *See* Tex. Gov't Code § 73.001. We are unaware of any conflict between Third Court of Appeals precedent and that of this court on any relevant issue. *See* Tex. R. App. P. 41.3.

pet.) (mem. op.); *Sims v. Smith*, No. 03-12-00242-CV, 2014 WL 2094200, at *1 (Tex. App.—Austin May 14, 2014, no pet.) (mem. op.); *Garrett v. Williams*, 250 S.W.3d 154, 159 (Tex. App.—Fort Worth 2008, no pet.); *see also Winfrey v. Chandler*, 318 S.W.2d 59, 61 (Tex. 1958). A district court has no constitutional or statutory jurisdiction to exercise supervisory control over prison officials absent an attempt by such officials to interfere with the district court's already pending jurisdiction. *Martinez*, 931 S.W.2d at 46. In *Barker*, we affirmed the dismissal of a TDCJ inmate's trial court suit seeking a writ of mandamus. As we stated, "the purpose of appellant's petition for writ of mandamus in the trial court was not to protect the trial court's jurisdiction, but to instigate litigation against appellee." *Barker*, 2012 WL 3866505, at *3 (citing *Winfrey*, 318 S.W.2d at 61 (holding a district court must have actual jurisdiction of a matter if it seeks to enforce its jurisdiction by its writ power); *Martinez*, 931 S.W.2d at 46). Therefore, we held that the trial court lacked subject-matter jurisdiction to order the relief requested in the inmate's petition for writ of mandamus. *Id.*; *see also* Tex. Gov't Code § 24.011; *Winfrey*, 318 S.W.2d at 61; *In re Smith*, No. 12-21-00011-CR, 2021 WL 500199, at *2 (Tex. App.—Tyler Feb. 10, 2021, orig. proceeding) (per curiam) (mem. op., not designated for publication).

In *In re Smith*, the relator challenged a trial court's failure to rule on his petition to issue a writ of mandamus against TDCJ. The court of appeals denied relief, explaining:

> However, only the Texas Supreme Court has authority to "issue a writ of mandamus or injunction, or any other mandatory or compulsory writ or process, against any of the officers of the executive departments of the government of this state to order or compel the performance of a judicial, ministerial, or discretionary act or duty that, by state law, the officer or officers are authorized to perform." Tex. Gov't Code Ann. § 22.002(c) (West Supp. 2020). TDCJ is an executive branch agency. *See id.* § 493.004 (West 2012); *see also*

7

> *Doughty v. State*, No. 01-13-00591-CR, 2014 WL 5465697, at \*2
> (Tex. App.—Houston [1st Dist.] Oct. 28, 2014, no pet.) (mem. op.,
> not designated for publication). Accordingly, Respondent lacks the
> authority to issue the writ of mandamus against TDCJ, as requested by
> Relator. *See* Tex. Gov't Code Ann. § 22.002(c); *see also Walker v.
> Gutierrez*, No. 03-18-00241-CV, 2018 WL 3060192, at \*1 (Tex.
> App.—Austin June 21, 2018, no pet.) (mem. op.) ("district court's
> mandamus jurisdiction is limited to the enforcement of its own
> jurisdiction and does not extend to the exercise of supervisory control
> over state prison officials").

*In re Smith*, 2021 WL 500199, at \*2.

For these reasons, the trial court lacked subject-matter jurisdiction over Williams's claims for mandamus and injunctive relief. The trial court did not err in dismissing these claims. *See, e.g.*, *id.*

## B. Williams has not alleged an injury-in-fact.

What remains are Williams's section 1983 and Texas Bill of Rights claims for money damages and declaratory relief based on alleged constitutional violations. In his petition, Williams asserted that appellees violated his federal and state constitutional rights "when they accepted a detainer without providing Plaintiff with a copy of the detainer's underlying basis and without providing Plaintiff with counsel to defend against the accusation against him" and "when they used the detainer as a basis to deny Plaintiff rehabilitative programs available to prisoners who do not have a detainer lodged against them."

Appellees say the trial court did not err in dismissing the suit under section 14.003 because Williams lacks standing. *See, e.g.*, *AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 649 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Standing is a constitutional prerequisite to suit. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it. *Id.* Thus, if a plaintiff lacks standing

8

to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it. *Id.*

The standing doctrine requires a plaintiff to allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief. *Id.* at 154. Thus, the standing inquiry involves three components: (1) injury-in-fact; (2) traceability; and (3) redressability. *See id.* at 154-55. Importantly, a plaintiff "'must demonstrate standing separately for each form of relief sought.'" *Id.* at 155 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). We must examine the petition's allegations carefully to ascertain whether the plaintiff is entitled to an adjudication of the particular claims asserted. *Id.* at 156. We review questions of standing de novo, *see Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004), accepting the plaintiff's factual allegations as true. *See In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018).

Although appellees challenge each element of standing, we focus only on the injury-in-fact component, as we conclude that issue is dispositive. Under both Texas and federal law, the injury alleged "must be concrete and particularized, actual or imminent, not hypothetical." *Id.* at 155; *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

1. *Claims under the United States Constitution*

We first address Williams's claims under the United States Constitution, for which Williams seeks relief through section 1983. The basic purpose of a section 1983 damages award is to compensate persons for injuries caused by the deprivation of constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 254 (1978). Williams says he has been denied his rights to counsel, due process, and equal protection.

9

### a. Alleged violation of right to counsel

We begin with Williams's assertion that appellees have denied him his right to counsel. *See* U.S. Const. amend. VI. The Sixth Amendment right to counsel attaches at the time adversary judicial proceedings are initiated by way of formal charge, preliminary hearing, indictment, information, or arraignment. *See Brewer v. Williams*, 430 U.S. 387, 398 (1977); *Kirby v. Illinois*, 406 U.S. 682, 688-89 (1972); *Pecina v. State*, 361 S.W.3d 68, 77 (Tex. Crim. App. 2012); *see also Heckman*, 369 S.W.3d at 156 ("This right attaches when the criminal defendant first appears before a judicial officer.") (citing *Rothgery v. Gillespie County*, 554 U.S. 191, 202 (2008)). The express terms of the Amendment limit its protections to criminal prosecutions. Once the adversarial judicial process has initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings. *Pecina*, 361 S.W.3d at 77 (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).[7]

Accepting Williams's allegations as true, the adversarial judicial process has not commenced against him in Louisiana because there exists no indictment or information, only an arrest warrant. Moreover, even assuming Louisiana had initiated adversarial judicial proceedings against Williams by formal charge, Louisiana's placing Texas on notice of that charge by filing a detainer does not trigger a right to counsel in Texas to "defend against" the detainer. *See State v. Tyson*, 603 S.W.2d 748, 752 (Tenn. Crim. App. 1980) (inmate incarcerated in Kentucky had no right to counsel regarding detainer filed by Tennessee agency). Though Texas courts have not addressed whether a right to counsel attaches when

---

[7] A formal charge, preliminary hearing, indictment, information, or arraignment is the "starting point" for the Sixth Amendment right to trial counsel because "it is only [when adversary proceedings commence] that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified." *Kirby*, 406 U.S. at 689; *see also Pecina*, 361 S.W.3d at 77 n.34.

an out-of-state detainer is lodged against an inmate, state courts considering the question have held it does not. *See People v. Evans*, 971 P.2d 229, 232 (Colo. App. 1998); *State v. Fagan*, No. 13-0799, 2014 WL 2600271, at \*4 (Iowa Ct. App. June 11, 2014); *Tyson*, 603 S.W.2d at 752. This is true for federal detainers too. "The existence of a federal detainer does not give rise to the right to counsel." *United States v. Reynolds*, No. 1:05-cr-00077-BLW, 2021 WL 1269112, at \*1 (D. Idaho Apr. 5, 2021) (citing *Rothgery*, 554 U.S. at 213).[8]

Additionally, the constitutional right to appointed counsel attaches in prosecutions only when an indigent litigant is actually deprived of his liberty. *See Scott v. Illinois*, 440 U.S. 367, 373 (1979) (adopting actual imprisonment as "the line defining the constitutional right to appointment of counsel"). The detainer's filing has not put Williams's liberty and freedom at risk. The arrest warrant has not been executed and, therefore, there is no possibility of imprisonment on the detainer. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981) (affirming general principle that an indigent's right to appointed counsel exists "only where the litigant may lose his physical liberty if he loses the litigation").

Finding the above authority persuasive, we conclude that the filing of an out-of-state detainer in Texas against an incarcerated defendant is not a critical stage of the proceedings that implicates the defendant's right to court-appointed counsel at public expense. Because Williams's Sixth Amendment right to counsel never attached as a result of the detainer, he could not have been deprived of this

---

[8] Although the IADA does not apply here, even that act contains no provision affording inmates against whom a detainer is lodged a right to counsel. *See* Tex. Code Crim. Proc. art. 51.14 (codifying provisions of IADA); *Evans*, 971 P.2d at 232 ("The benefits and protections of the IAD are statutory and not of constitutional dimension. We are not aware of any authority for the proposition that a defendant has the right to court-appointed counsel to assist in perfecting any statutory rights accorded by the IAD.") (internal citations omitted). Williams cites no pre-IADA law imposing such a duty on TDCJ.

constitutional right. Williams's claim of injury being "too slight for a court to afford redress,"[9] his petition fails to allege an injury-in-fact.[10]

### b. Alleged violation of equal protection rights

Williams alleged that the detainer precludes him "from a number of rehabilitative programs, such as trusty [sic] classification, furlough, or early parole," and from "obtaining a medical reprieve should one become necessary." According to Williams, appellees "used the detainer as a basis to deny Plaintiff rehabilitative programs available to prisoners who do not have a detainer lodged against them." Because Williams alleges disparate treatment between himself and other prisoners, we construe this part of his pleading as a complaint that his equal protection rights have been violated.

Williams's claim, however, is not grounded on an actual and concrete invasion of a legally protected interest. *See Lujan*, 504 U.S. at 560. Inmates have no constitutional right to classification, furlough, or early parole. *See Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (concluding that inmates have no right to a specific custodial classification); *see also Johnson v. Davis*, 178 S.W.3d 230, 239 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (holding inmates have no protected liberty interest in parole); *Morris v. McCotter*, 773 F. Supp. 969, 971-72 (E.D. Tex. 1991) (finding no liberty interest in furlough). Separately, to the extent Williams claims that the detainer denies him the ability to obtain a medical

---

[9] *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008).

[10] We note that, though not constitutionally required to do so, the state provides inmates such as Williams access to the State Counsel for Offenders office, which can provide assistance with detainers. *See, e.g.*, Offender Orientation Handbook ch. 1, § VI(G)(5) (noting that State Counsel for Offenders' Legal Services Section provides inmates assistance for certain matters, including detainers) (rev. Feb. 2017), *available at* https://www.tdcj.texas.gov/documents/ Offender_Orientation_Handbook_English.pdf. Williams appears to acknowledge this in his brief, but he does not state in his petition whether he has sought the services of the State Counsel for Offenders.

reprieve, "should one become necessary," the alleged harm is hypothetical. *See Lujan*, 504 U.S. at 560; *Heckman*, 369 S.W.3d at 155. The possibility that he may be denied a request for a medical reprieve in the future does not constitute an actual and concrete, non-hypothetical injury.

Williams's petition fails to allege the violation of a constitutionally protected interest under the Equal Protection Clause for another reason. That clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *See* U.S. Const. amend XIV; *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Williams alleged that he has been treated differently from those prisoners against whom no detainers have been lodged. But he has not asserted that others "similarly situated" to him—inmates against whom detainers have been lodged—have been treated differently than appellees have treated Williams. *See, e.g.*, *Terrell v. Williams*, No. 03-13-00473-CV, 2015 WL 3393811, at *4 (Tex. App.—Austin May 21, 2015, pet. denied) (mem. op.) (plaintiff who failed to allege or identify a similarly situated person who was treated differently than plaintiff was treated did not allege a valid equal protection claim); *City of Dallas v. Jones*, 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd) (requiring plaintiff to allege "he is being treated differently from those whose situation is directly comparable in all material aspects" to plead a "valid equal protection claim").

Williams has not alleged a deprivation of cognizable interest under his equal protection claim.

c.    Alleged violation of due process rights

The only other factual deprivation alleged is that appellees failed to provide him a copy of the detainer's "underlying basis."[11]  We construe this allegation as the factual support for his claim that appellees denied him due process.  Again, we conclude that Williams has not alleged an injury-in-fact.

Both the state and federal constitutions prohibit the state from depriving an individual of his life, liberty, or property without due process of law.  U.S. Const. amends. V, XIV; Tex. Const. art. I, § 19.  Among the constituent components of due process are the right to notice and a hearing, including the opportunity to be heard at a meaningful time, in a meaningful manner.  *Smith v. State*, 18 S.W.3d 770, 771 (Tex. App.—San Antonio 2000, pet. ref'd).  Procedural due process ensures that government decisions will be made with sufficient procedural safeguards.  *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.  *Roth*, 408 U.S. at 569; *see also Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 561 (Tex. 1985).  A previously recognized right or status must be "distinctly altered or extinguished" by the government's actions in order for the individual to assert his due process rights.  *See Paul v. Davis*, 424 U.S. 693, 710-12 (1976).

Williams has not identified a constitutional right to the "underlying information" he seeks.  The filing of the detainer does not result in a deprivation of his liberty interest nor has it altered Williams's status vis-à-vis Louisiana.  Thus, he

---

[11] Williams alleged that appellees did not provide him "necessary information to refute the detainer," "information on the charges," and "necessary information to challenge the basis of the detainer."  Williams has not alleged that appellees denied him a copy of the detainer itself, and the descriptions of the detainer included in his petition strongly suggest he has received it.

has not articulated an injury-in-fact resulting from the alleged constitutional deprivation. Williams cannot assert a denial of any right guaranteed to him and protected under the Fourteenth Amendment based on the alleged failure to provide him a copy of the detainer's "underlying basis."

In *Moody v. Daggett*, 429 U.S. 78 (1976), the United States Supreme Court rejected an inmate's claim that he was entitled to a prompt parole revocation hearing upon the issuance of a parole violator warrant, which was lodged as a detainer where he was incarcerated. The *Moody* court rejected the inmate's argument that the delayed hearing violated his due process rights. The court found that liberty interests sufficient for due process rights to attach were not implicated until the warrant underlying the detainer had been executed. *Id.* at 87. Here, as in *Moody*, Williams's liberty interests are not sufficiently implicated because the detainer is alleged to be based only on a Louisiana arrest warrant that has not been executed. *See id.* ("With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which *Morrissey* sought to protect.").

Williams has not alleged a deprivation of a constitutionally cognizable liberty interest under his due process claim and thus has failed to allege an injury-in-fact.

Accordingly, for all the above reasons, the trial court did not err in granting appellees' motion to dismiss Williams's section 1983 claims based on purported violations of the United States Constitution. We overrule this part of Williams's second issue.

15

## 2. *Claims under the Texas Constitution's Bill of Rights*

Williams also seeks relief under the Texas Bill of Rights, based on the same alleged constitutional deprivations. *See* Tex. Const. art. I, § 10. But the Texas Constitution's Bill of Rights does not provide a private right of action for damages. *See City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391 (Tex. 2007); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148-49 (Tex. 1995). Equitable or injunctive relief may in some instances be available to remedy state constitutional violations. *See City of Elsa*, 226 S.W.3d at 391; *City of Beaumont*, 896 S.W.2d at 148-49; *City of Houston v. Downstream Envtl., L.L.C.*, 444 S.W.3d 24, 38 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Vriesendorp v. M.D. Anderson Cancer Ctr.*, No. 14-97-00354-CV, 1998 WL 386320, at *3 (Tex. App.—Houston [14th Dist.] July 9, 1998, pet. denied) (not designated for publication). As we have stated, however, the trial court lacked jurisdiction to grant the injunctive or equitable relief requested in Williams's petition. Construing Williams's appellate brief liberally as challenging the dismissal of his claims under the Texas Bill of Rights, we conclude the trial court did not err in dismissing those claims.

## 3. *Declaratory judgment claim*

"The UDJA does not enlarge the trial court's jurisdiction, but is 'merely a procedural device for deciding cases already within a court's jurisdiction.'" *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621-22 (Tex. 2011) (quoting *Tex. Ass'n of Bus.*, 852 S.W.2d at 444) ("[W]e have interpreted the Uniform Declaratory Judgments Act . . . to be merely a procedural device for deciding cases already within a court's jurisdiction rather than a legislative enlargement of a court's power, permitting the rendition of advisory opinions."); *see also Tex. Dep't of Pub. Safety v. Alexander*, 300 S.W.3d 62, 80 (Tex. App.—Austin 2009, pet. denied). "The [UDJA] does not confer jurisdiction on a trial court, but rather

makes declaratory judgment available as a remedy for a cause of action already within the court's jurisdiction." *Reynolds v. Reynolds*, 86 S.W.3d 272, 275-76 (Tex. App.—Austin 2002, no pet.).

As we have held, Williams either has not alleged an injury-in-fact sufficient to support his claims for deprivations of constitutional rights, or he has otherwise asserted claims for relief over which the trial court lacked subject-matter jurisdiction by statute. These shortcomings are fatal to any remaining claim for declaratory relief. *See Reynolds*, 86 S.W.3d at 277 (claim for declaratory relief not viable when no justiciable controversy exists); *see also Jones v. Port Arthur Indep. Sch. Dist.*, No. 09-16-00374-CV, 2018 WL 3149162, at *6 (Tex. App.—Beaumont June 28, 2018, no pet.) (mem. op.) ("Because we have already concluded Jones did not plead facts that would establish a facially valid constitutional claim implicating the trial court's jurisdiction, he is not entitled to relief under the Act.").

We overrule Williams's second issue in full. Due to our disposition, we need not reach Williams's first issue, in which he challenges the district court's granting of the motion to dismiss for failure to comply with Chapter 14's exhaustion and filing requirements.

### Conclusion

We affirm the trial court's judgment dismissing Williams's lawsuit.


/s/    Kevin Jewell
       Justice


Panel consists of Chief Justice Christopher and Justices Jewell and Poissant.